[No. C033513. Third Dist. Feb. 27, 2001.]

THE PEOPLE, Plaintiff and Appellant, v.
BRADFORD REDD STRONG, Defendant and Respondent.

330

## COUNSEL

John D. Phillips, District Attorney, James P. Willett, Assistant District Attorney, David Wellenbrock, Chief Deputy District Attorney, and Kevin A. Hicks, Deputy District Attorney, for Plaintiff and Appellant.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**KOLKEY, J.—**

## I. INTRODUCTION

The California Supreme Court has ruled that for a trial court to depart from the sentencing scheme of the "Three Strikes" law,[1] "the defendant [must] be deemed [to be] outside the scheme's spirit, in whole or in part," in light of "the particulars of his background, character, and prospects" and the nature and circumstances of his present felonies and strikes.[2] (*People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429] (*Williams*).)

In this case, we are confronted with the question whether a trial court abuses its discretion when it concludes that a *career criminal* is outside the spirit of the Three Strikes law, and accordingly dismisses that defendant's sole strike—a prior conviction of assault with a deadly weapon, inflicting great bodily injury.[3] The trial court in this case reasoned that the strike "appear[ed] to be out of character" with the defendant's nonviolent criminal record, and that the 41-year-old defendant had "reached an age where statistically he pose[d] a reduced risk to society."

We shall reverse. The defendant here had a 22-year criminal record, comprised of six felonies within the past eight years and 12 misdemeanors; his sole strike—an unprovoked and violent assault with a knife on a by-stander—occurred only three years before his current offense—the sale of a substance falsely represented to be cocaine.[4]

Although the trial court reasoned that defendant's violent strike was "out of character," a defendant who falls squarely within the law's letter does not take himself outside its spirit by the additional commission of a virtually uninterrupted series of nonviolent felonies and misdemeanors over a lengthy period. After all, the Three Strikes law was devised for the "revolving door"

---

[1]Penal Code sections 667, subdivisions (b)-(i), and 1170.12, subdivisions (a)-(d). Unless designated otherwise, all further statutory references will be to the Penal Code.

[2]We shall use the term "strike" to describe a prior serious or violent felony conviction within the meaning of the Three Strikes law. (§§ 667, subd. (c)(1), 1170.12, subd. (b)(1).) And for ease of expression, we shall use the more popular phrase, "to dismiss a strike," instead of the more technically correct but cumbersome phrases, "to vacate a prior felony conviction finding" or "to strike a prior felony conviction allegation."

[3]Sections 245, subdivision (a)(1), and 1192.7, subdivision (c)(8).

[4]Health and Safety Code section 11355.

career criminal,[5] and was expressly intended "to ensure longer prison sentences . . . for those who commit a felony" as long as they were previously convicted of at least one strike.[6] The fact that a defendant who qualifies for sentencing under the Three Strikes law is also a habitual offender can hardly act as mitigation so as to take him outside the spirit of that law. Likewise, middle age, considered alone, cannot take a defendant outside the spirit of the law; otherwise, the very factor that takes a defendant within the spirit of the law—a lengthy criminal career with at least one serious or violent felony—would have the inevitable consequence—age—that would purportedly take him outside it. Extraordinary must the circumstance be by which a career criminal can be deemed to fall outside the spirit of the very statutory scheme within which he squarely falls and whose continued criminal career the law was meant to attack.

## II. Factual and Procedural Background

In light of defendant's guilty plea, the facts of defendant's current offense are few: While still on parole for a conviction of assault with a deadly weapon, defendant approached an undercover officer on the street in the spring of 1999 and asked what he was looking for. The officer responded "[R]ock." Asked how much, the officer said, "A dime." Warning that he had a gun and was not to be "messed with," defendant pulled out a "rock-like" substance from his hat and sold it for $10. The substance was later found not to contain any illicit narcotic. Defendant was charged with the sale of a substance falsely represented to be cocaine in violation of Health and Safety Code section 11355.

At the time of the preliminary hearing, the People informed the trial court that it intended to amend the complaint to add a strike—a felony conviction in 1996 for assault with a deadly weapon, causing great bodily injury. According to the probation report, the facts of the assault were as follows: In the fall of 1996, defendant had approached the victim, who was walking on the street with his girlfriend in the early hours of the morning. Defendant muttered something and then stabbed the victim in the abdomen with his pocket knife. The wound required numerous stitches, and the victim was in the hospital for six days. Defendant pleaded guilty to the offense, admitted the offense was a serious felony within the meaning of the Three Strikes law, and served two years in prison.

The trial court announced that an amendment to add a strike would be "unreasonable." Although the complaint had not yet been amended or the

[5]E.g., *People v. Gaston* (1999) 74 Cal.App.4th 310, 312 [87 Cal.Rptr.2d 829].

[6]Section 667, subdivision (b); Ballot Pamphlet, General Election (Nov. 8, 1994) text of Proposition 184, page 64.

probation report prepared, the court then informed defendant that if he wished to plead guilty to the current offense and admit the prior conviction, the court would sentence him to the lower term of the offense and dismiss the strike. The defendant accepted the court's proposal, pleading guilty to the current offense and admitting the prior conviction.

Prior to defendant's admission of the strike, the court cautioned him:

"THE COURT: . . . if I'm wrong and the [district attorney] decides to have this reviewed by an Appellate Court, if the Appellate Court tells me I'm wrong, then the sentence is automatically going to be doubled; they will automatically double it[.] They won't send it back here. They will just double your sentence. Do you understand that?"

"THE DEFENDANT: Yes, sir. . . .

"THE COURT: Okay. So that's where we stand . . . . knowing that, do you want to admit this prior strike?

"THE DEFENDANT: Yes, sir, I do."

At sentencing, the People opposed the court's decision to dismiss the strike. Among other things, the prosecution argued: (1) defendant had a criminal record that spanned over 20 years, including convictions for 12 misdemeanors and six felonies (including the current offense);[7] (2) defendant was on parole for the 1996 assault conviction at the time he sold the

---

[7]Defendant's record began in 1977 when he was 20 years old and consisted of the following convictions (excluding offenses committed while imprisoned):

1977 — driving under the influence of alcohol or drugs and theft (his 1st and 2d misdemeanors);

1981 — forgery (3d misdemeanor)

1982 — forgery (4th misdemeanor)

1989 — theft over $200 (5th misdemeanor)

1990 — marijuana possession (6th misdemeanor)

1990 — assault with a deadly weapon (7th misdemeanor)

1990 — theft (8th misdemeanor)

1991 — false drug sale (9th misdemeanor pursuant to section 17 [discretion to determine offense to be a misdemeanor or felony])

1991 — marijuana transportation/distribution (1st felony)

1991 — marijuana transportation/distribution (2d felony)

1992 — marijuana possession for sale (3d felony)

1995 — theft (4th felony)

1996 — assault with a deadly weapon causing great bodily injury (5th felony and the strike at issue in this case)

1998 — driving under the influence of alcohol or drugs, driving with blood-alcohol content of .08 percent or more (10th and 11th misdemeanors)

1998 — public intoxication (12th misdemeanor).

bogus drugs to the undercover officer; (3) the assault was apparently unprovoked and serious, as the victim required surgery; (4) the current offense posed a threat of violence since "[p]eople get assaulted, stabbed and even killed for selling bunk when prospective buyers discover they have been cheated"; and (5) defendant initiated the current offense by approaching an undercover officer, which evidenced that the crime entailed planning.

The trial court was unpersuaded and (1) dismissed the strike, (2) denied defendant probation because of his long record and current involvement with narcotics, and (3) sentenced defendant to the low term of 16 months.

The trial court's minute order gave the following explanation for the court's decision to dismiss the strike:

"The matter of the current offense is relatively non-threatening because it did not involve any actual controlled substance.

"The defendant has reached an age where statistically he poses a reduced risk to society.

"The defendant's record is devoid of violence or threat of violence except for the strike, which did not involve a firearm.

"He has no record of firearm use or possession.

"His entire record consists of petty acquisitive offenses and substance abuse.

"His one prior strike appears to be out of character in view of his record, and sentencing him under [section] 1170.12 would be inconsistent with the spirit of the Three-Strikes law as explicated in *People v. Williams*."

### III. DISCUSSION

#### A. *The Standard for Dismissal of a Strike*

The People argue that "[t]he trial court abused its discretion in dismissing the prior 'strike' because [the defendant was] well within the Three Strike[s] law's spirit."

Section 1385, subdivision (a) (hereinafter section 1385(a)),[8] provides in relevant part that "[t]he judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

■ In *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 [53 Cal.Rptr.2d 789, 917 P.2d 628] *(Romero)*, the California Supreme Court concluded that "section 1385(a) . . . permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law."

The state high court emphasized, however, that "[a] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse."[9] Quoting from *People v. Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193], the court stated that " ' "the language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People,* in determining whether there should be a dismissal. [Citations.]" ' "[10]

In *Williams,* our state Supreme Court gave further definition to the standard for dismissing a strike "in furtherance of justice" by requiring that the defendant be deemed outside the spirit of the Three Strikes law before a strike was dismissed: "We therefore believe that, in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions and the particulars of his background, character, and prospects, *the defendant may be deemed outside the scheme's spirit, in whole or in part,* and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies. If it is striking or vacating an allegation or finding, it must set forth its reasons in an order entered on the

---

[8]Section 1385(a), in relevant part provides: "The judge or magistrate may, either of his or her own motion or upon application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for this dismissal must be set forth in an order entered upon the minutes. . . ."

[9]*Romero, supra,* 13 Cal.4th at page 530.

[10]*Romero, supra,* 13 Cal.4th at page 530, italics added by *People v. Orin.*

minutes, and if it is reviewing the striking or vacating of such allegation or finding, it must pass on the reasons so set forth."[11]

◼ In passing on the trial court's reasons for dismissing a strike, the appellate court must determine whether the trial court's ruling was an abuse of discretion.[12] "This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts. [Citations.]"[13] As in any review based on the abuse of discretion standard, "the trial court's discretion is limited by the applicable legal principles."[14]

◼ Accordingly, since the Three Strikes law establishes a sentencing norm which " 'requires the court explicitly to justify a departure therefrom' "[15] (in the form of the reasons required by § 1385(a) to be set forth in an order), we must assess whether the reasons given by the trial court are a reasonable basis for concluding that a defendant should be deemed "outside the scheme's spirit" and hence "treated as though he had not previously been convicted of one or more serious and/or violent felonies," as explained in *Williams, supra,* 17 Cal.4th at page 161.

### B. *The Meaning of "Outside the Scheme's Spirit"*

But what does it mean to deem a defendant's circumstances to fall "outside the scheme's spirit, in whole or in part," as expressed in *Williams,* when those same circumstances fall within the scheme's letter?

◼ The spirit of a law is "[t]he general meaning or purpose of the law, as opposed to its literal content."[16] But the law's spirit cannot be wholly divorced from its letter for two reasons:

First, the law's purpose is discerned from its intent.[17] And under traditional canons of statutory construction, " '[t]he statutory language . . . is the

---

[11]*Williams, supra,* 17 Cal.4th at page 161, italics added.

[12]*Williams, supra,* 17 Cal.4th at page 162.

[13]*Williams, supra,* 17 Cal.4th at page 162.

[14]*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144 [86 Cal.Rptr.2d 816, 980 P.2d 371]; *People v. Russel* (1968) 69 Cal.2d 187, 195 [70 Cal.Rptr. 210, 443 P.2d 794].

[15]*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434 [70 Cal.Rptr.2d 462], quoting *People v. Langevin* (1984) 155 Cal.App.3d 520, 524 [202 Cal.Rptr. 234].

[16]Black's Law Dictionary (7th ed. 1999) page 1409; see *Holy Trinity Church v. United States* (1892) 143 U.S. 457, 459 [12 S.Ct. 511, 512, 36 L.Ed. 226, 228].

[17]Black's Law Dictionary, *supra,* at page 814 ("A lawmaker's state of mind and purpose in drafting or voting for a measure" is that lawmaker's "intent").

best indicator of legislative intent.' "[18] From the statutory language may the objective of the law—the evil to be remedied—be discerned, which objective may be corroborated by the circumstances under which the law was enacted.[19] As noted by the Supreme Court in *Williams*, the letter of the statutory scheme "may . . . suggest its 'spirit.' For even when it does not declare its purpose *in ipsissimis verbis,* it indicates its objective through its scope and operative terms."[20]

Second, the spirit of a law must be largely guided by its letter, lest the law's letter be altered under cover of an undisciplined and unanchored spirit, by a judge's personal preferences that trespass on the Legislature's province: "[A]n application of the principle [that an act is within the letter but not the spirit of the law] so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter."[21]

Thus, the spirit of the law is informed, guided, and limited by its letter, lest an unanchored spirit escape its legislative receptacle and take on an unenacted shape.

 In this case, removing any doubt as to its intent, the Three Strikes law expressly declares that its purpose is "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses."[22] Additionally, the plain language of the operative provisions of the law expresses its purpose in emphatic and mandatory terms: "Notwithstanding any other law, [the Three Strikes provisions] *shall be applied in every case* in which a defendant has a prior felony conviction [that qualifies as a strike]. The prosecuting attorney shall plead and prove each prior felony conviction except as provided in paragraph (2) [which allows for dismissal of a strike 'in the furtherance of justice pursuant to Section 1385' or for insufficient evidence]."[23] Thus, the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception

---

[18]*Williams v. Superior Court* (1993) 5 Cal.4th 337, 350 [19 Cal.Rptr.2d 882, 852 P.2d 377].

[19]See *Holy Trinity Church v. United States, supra,* 143 U.S. at pages 462-466 [12 S.Ct. at pages 512-514, 36 L.Ed. at pages 229-230].

[20]*Williams, supra,* 17 Cal.4th at page 160.

[21]*Crooks v. Harrelson* (1930) 282 U.S. 55, 60 [51 S.Ct. 49, 50, 75 L.Ed. 156, 175].

[22]Section 667, subdivision (b); Ballot Pamphlet, General Election, *supra,* text of Proposition 184, at page 64.

[23]Sections 667, subdivision (f)(1), and 1170.12, subdivision (d)(1), italics added; *Romero, supra,* 13 Cal.4th at pages 529-530.

to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."[24] As our Supreme Court concluded, "[p]lainly the Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders."[25]

In this light, extraordinary must the circumstance be by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack. "Where strict adherence to a statute's plain language also furthers its statutory purpose, such an interpretation can be safely said to effectuate its legislative intent."[26] And longer sentences for career criminals who commit at least one serious or violent felony certainly goes to the heart of the statute's purpose—or spirit.

## C. *Application of the Standard to a Revolving-door Defendant*

Following *Williams, supra,* 17 Cal.4th 148, the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike of those defendants with a long and continuous criminal career. (E.g., *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [89 Cal.Rptr.2d 401] [no abuse of discretion in refusing to vacate one of defendant's strikes because defendant "is an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed"]; *People v. Gaston, supra,* 74 Cal.App.4th at p. 320 [reversing order vacating 17-year-old strike because "[a]s we observed at the outset, [defendant] is the kind of revolving-door career criminal for whom the Three Strikes law was devised"]; *People v. Thornton* (1999) 73 Cal.App.4th 42, 49 [86 Cal.Rptr.2d 84] [reversing order dismissing two of three strikes, where defendant had a long history of felonies, misdemeanors, drug use, and parole violations, which showed that his background, character, and prospects were "dismal, and cannot be said to be outside the spirit of the three strikes law"]; *People v. Barrera* (1999) 70 Cal.App.4th 541, 554-555 [82 Cal.Rptr.2d 755] [the court's refusal to dismiss one of defendant's two 14-year-old strikes was justified by defendant's "long-standing drug addiction," his criminal history, including 11 different misdemeanors within the past seven years, three prior felonies, and numerous probation and parole violations]; *People v. Humphrey* (1997) · 58 Cal.App.4th 809, 813 [68 Cal.Rptr.2d 269] [reversing order

---

[24]*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474 [79 Cal.Rptr.2d 83].

[25]*Romero, supra,* 13 Cal.4th at page 528.

[26]*People v. Elsey* (2000) 81 Cal.App.4th 948, 951 [97 Cal.Rptr.2d 269].

dismissing prior robbery conviction that was nearly 20 years old where "the defendant has led a continuous life of crime after the prior," including drug use, two counts of burglary, robbery, and the current conviction of grand theft]; *People v. DeGuzman* (1996) 49 Cal.App.4th 1049, 1054 [57 Cal.Rptr.2d 577] [defendant's record of felonies and parole violations from 1969 to 1994 "establishes that it would have been a manifest abuse of the trial court's limited discretion to strike appellant's prior felony conviction allegations 'in furtherance of justice' under section 1385"]; see also *People v. McGlothin, supra,* 67 Cal.App.4th at p. 475 [reversing dismissal of strike where defendant's criminal history "extends back to 1972 when he was 15 years of age," including seven previous felonies, various misdemeanors, and seven parole and probation violations].)

In *People v. Gaston, supra,* 74 Cal.App.4th at pages 312-313, 320, for instance, the Court of Appeal reversed, as an abuse of discretion, an order dismissing one of the defendant's strikes, although it had occurred 17 years before his current offenses (unlawful driving of a vehicle and receipt of stolen property). The court concluded that the defendant could not be deemed outside the spirit of the Three Strikes law because of his "unrelenting record of recidivism, even while on parole or probation from previous felony convictions." (*Id.* at p. 320.) Concluding that "the remoteness in time of the 1981 strike priors is not significant in light of [the defendant's] continuous crime spree, which has substantially spanned his entire adult life" (*id.* at p. 321), the court observed that "he is the kind of revolving-door career criminal for whom the Three Strikes law was devised." (*Id.* at p. 320.)

Likewise, in *Williams, supra,* 17 Cal.4th 148, our state Supreme Court concluded that the trial court had abused its discretion in dismissing one of the defendant's strikes where the defendant, who pleaded guilty to driving a vehicle under the influence, had a 19-year criminal history, including attempted robbery and rape convictions in 1982 that qualified as strikes. Although the trial court had vacated the finding relating to the attempted robbery conviction in 1982 because the strike was approximately 13 years old and because the defendant had not engaged in *violent* crimes since then, the state high court ruled: "In light of the nature and circumstances of his present felony of driving under the influence, which he committed in 1995, and his prior conviction for the serious felony of attempted robbery and his prior conviction for the serious and violent felony of rape, both of which he suffered in 1982, and also in light of the particulars of his background, character, and prospects, which were not positive, Williams cannot be deemed outside the spirit of the Three Strikes law in any part, and hence may not be treated as though he had not previously been convicted of those

serious and/or violent felonies."[27] The high court further explained that the fact that 13 years had passed between his prior strikes and his present felony was "not significant" because "[h]e did not refrain from criminal activity during that span of time, and he did not add maturity to age."[28]

Similarly, in this case, defendant had a 22-year criminal record, including 12 misdemeanors and six felonies (including the current offense). Moreover, unlike *Williams* and *Gaston,* where the dismissed strikes were 13 and 17 years old, respectively, defendant's serious felony conviction in this case was only three years old—and he was still on parole for that conviction when he committed the current felony. Further, all five of defendant's previous felonies occurred in the last eight years of his 22-year crime career. Like the defendant in *Gaston,* "he is the kind of revolving-door career criminal for whom the Three Strikes law was devised."[29]

### D. *Defendant's Authorities*

Defendant nonetheless argues that he should be excepted from the Three Strikes law because "he is not an offender with multiple violent felony offenses in his past and a new series of violent offenses on the horizon."

But the Three Strikes law does not require *multiple* violent felony offenses to come within the statutory scheme. *Williams* and its progeny do not hold that a defendant's criminal career must consist entirely or principally of violent or serious felonies to bring a defendant within the spirit of the Three Strikes law. The Three Strikes law only requires that a defendant be convicted of a current felony and have "one or more prior [serious or violent] felony convictions . . . ."[30] And since only one qualifying felony is required to trigger a longer sentence, the virtually uninterrupted commission of *additional* nonqualifying felonies over a lengthy period cannot logically act as mitigation so as to take the defendant outside the spirit of the scheme in which he literally falls. Viewed from another perspective, if the spirit of the law, as informed by its principal provisions, considers only one strike necessary to place a defendant within the recidivist-targeted law, how does the addition of a lengthy criminal record place the defendant outside the spirit of that law?

Cases where the dismissal of a strike has been upheld are distinguishable. In *People v. Garcia* (1999) 20 Cal.4th 490, 503 [85 Cal.Rptr.2d 280, 976 P.2d 831], our state Supreme Court concluded that it was not an abuse of

---

[27]*Williams, supra,* 17 Cal.4th at pages 162-163.

[28]*Williams, supra,* 17 Cal.4th at page 163.

[29]*People v. Gaston, supra,* 74 Cal.App.4th at page 320.

[30]Sections 667, subdivision (c), and 1170.12, subdivision (a).

discretion for the trial court to dismiss prior burglary conviction allegations with respect to one but not both of the defendant's current burglary counts. The dismissal still left defendant to be sentenced to a term of 30 years in accordance with the Three Strikes law in connection with the second burglary count. The Supreme Court reasoned that the trial court's decision did not fall outside the bounds of reason because: the sentence was not lenient; the defendant's prior convictions all arose from a "single period of aberrant behavior for which he served a single prison term"; the defendant cooperated with police; the defendant's criminal history "did not include any actual violence"; and the defendant's crimes were related to drug addiction.[31]

In contrast, here, defendant's sentence *was* lenient—16 months, not 30 years—and his criminal history *did* include actual violence. But most importantly, the defendant in *Garcia* was sentenced fully in accordance with the Three Strikes law with respect to one of his current convictions, thereby serving the law's purpose of ensuring longer prison sentences for those who have been previously convicted of serious or violent felony offenses.

Defendant cites *In re Saldana* (1997) 57 Cal.App.4th 620, 627 [67 Cal.Rptr.2d 183], as an example of a case where the appellate court "affirmed the trial court's exercise of discretion to strike one of the defendant's strike priors." There, the trial court dismissed a 1977 burglary conviction, but not a 1981 robbery conviction, "stating that the current offense was relatively minor, the burglary conviction was 16 years old, respondent had 2 children and was still married to the same wife . . . , and was older and less likely to commit crimes now." (*Id.* at p. 624.)

But there, the defendant did not have a lengthy and continuous criminal history; the dismissed strike was 16 years old; and the decision preceded *Williams, supra,* 17 Cal.4th 148, and thus was not informed by the relevant standard.

In *People v. Bishop* (1997) 56 Cal.App.4th 1245 [66 Cal.Rptr.2d 347] (*Bishop*), also cited by defendant, the appellate court upheld the trial court's decision to dismiss two of three strikes where all three crimes (robberies) were committed 17 to 20 years before the defendant's current offense of petty theft. Upholding the defendant's sentence of 12 years, the Court of Appeal ruled that it could not "say that the trial court's decision . . . constituted an abuse of discretion" since "the nature and timing of a defendant's crimes may also operate as mitigation, such as in this case where the

---

[31]*People v. Garcia, supra,* 20 Cal.4th at page 503.

present crime is a petty theft and the prior violent offenses are remote."[32] The Court of Appeal also stated that the trial court could take into account the length of the sentence in conjunction with the 50-year-old defendant's age and "evaluate factors such as how long the state maintains an interest in keeping the defendant as a public charge and after what period of incarceration he is no longer likely to offend again."[33]

Not only is *Bishop* distinguishable from our case, but it also predates *Williams* and thus was not informed by the relevant standard. First, *Bishop* is distinguishable. The defendant in *Bishop* had a shorter criminal record (three remote strikes, one battery, and four subsequent petty thefts) than the 18-time convicted defendant here; the *Bishop* defendant's 12-year sentence would preclude his release until he was almost 60 years of age,[34] whereas our 41-year-old defendant's 16-month sentence would place him back into society shortly; and the *Bishop* defendant's violent crimes were remote, whereas defendant's violent assault here was recent. That latter point alone distinguishes a principal reason upon which *Bishop* relied, since the *Bishop* court said that "the nature and timing of a defendant's crimes may also operate as mitigation, such as in this case where the present crime is a petty theft and the prior violent offenses are remote."[35] In contrast, in this case, defendant's prior violent offense was not 20 years old, but occurred three years before his current crime.

Second and more importantly, since *Bishop* predates *Williams,* it did not apply those distinguishable facts to the applicable standard under *Williams, supra,* 17 Cal.4th 148. Instead, the *Bishop* court merely suggested that the nature of the present crime (petty theft) and the remoteness of the defendant's prior violent offenses may operate to mitigate his Three Strikes sentence. It never addressed the overall question whether the defendant should be deemed to fall outside the scheme's spirit. Moreover, in contrast to the *Bishop* court's focus on the remoteness of the strikes, the Three Strikes law provides that "[t]he length of time between the prior felony conviction and the current felony conviction shall not affect the imposition of sentence."[36] While we have no occasion to construe the scope of that directive in this case (since the strike here is not remote), it suggests, at a minimum, that remoteness alone cannot take a defendant outside the spirit of the very law that expressly rejects remoteness as a basis for avoiding the law.

Finally, *Bishop* relied heavily on the state Supreme Court's decision in *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968 [60 Cal.Rptr.2d 93,

---

[32]*Bishop, supra,* 56 Cal.App.4th at page 1251.
[33]*Bishop, supra,* 56 Cal.App.4th at page 1251.
[34]*Bishop, supra,* 56 Cal.App.4th at page 1248.
[35]*Bishop, supra,* 56 Cal.App.4th at page 1251.
[36]Section 667, subdivision (c)(3).

928 P.2d 1171], for the scope of the trial court's right to exercise its discretion. But the *Alvarez* court addressed a different issue with a different scope of discretion: the trial court's unqualified discretion to determine whether to reduce a wobbler to a misdemeanor for purposes of the Three Strikes law. And it contrasted that discretion with the qualified discretion at issue here under section 1385(a), which, it acknowledged, was an example of a statute that "contain[ed] express qualifications delineating, and thereby restricting, the particular exercise of discretion."[37]

Accordingly, the foregoing cases are distinguishable: Two of them predated *Williams,* and none of them involved a defendant with as lengthy and continuous a criminal career as the defendant here or with a recent act of violence, as here; and they nonetheless authorized a longer sentence than imposed here. In this case, defendant's recent strike, framed within a lengthy and continuous history of increasingly serious criminal activity, places this case squarely within both the letter and spirit of the Three Strikes law.

### E. *The Trial Court's Reasons*

We now turn to whether any of the reasons cited by the trial judge could reasonably constitute a circumstance—that extraordinary circumstance—that would take a long-standing revolving-door criminal, like defendant, outside the law's spirit.

The trial judge ruled that sentencing defendant under the Three Strikes law "would be inconsistent with the spirit" of the law because: (1) the current offense was "relatively non-threatening"; (2) defendant had reached an age where "statistically he poses a reduced risk to society"; (3) defendant's record is "devoid of violence or threat of violence except for the strike, which did not involve a firearm"; (4) defendant had "no record of firearm use or possession"; (5) defendant's "entire record consist[ed] of petty acquisitive offenses and substance abuse"; and (6) defendant's prior strike "appears to be out of character." None of these reasons takes this case out of the "scheme's spirit":

*Reason No. 1: The Present Offense Was Nonthreatening.*

The first reason—that the current offense was "relatively non-threatening because it did not involve any actual controlled substance"—does not, in and of itself, take the felony out of the Three Strikes statutory scheme.

---

[37]*People v. Superior Court (Alvarez), supra,* 14 Cal.4th at page 977.

By its very terms, any felony triggers a longer sentence under the Three Strikes law as long as the defendant has sustained at least one strike.[38] Since the express intent of the Three Strikes law is "to ensure longer prison sentences" for any defendant who has a qualifying strike and subsequently commits "a felony,"[39] the nonviolent or nonthreatening nature of the felony cannot alone take the crime outside the spirit of the law. (*People v. Gaston, supra,* 74 Cal.App.4th at p. 321 [while the current offense—unlawful driving or taking of a vehicle—was not defined as serious under Three Strikes law, "it is far from trivial"].) To conclude otherwise would rewrite the statute to only trigger a longer prison sentence for those defendants who commit a violent or threatening felony after having committed at least one strike. That is not the law's letter or spirit.

Further, the current offense here was hardly devoid of the threat of violence. First, defendant had threatened that he was armed. And at the sentencing hearing, the trial court recognized the risk for violence arising from arguments caused by a bogus drug sale: "First of all, as we know, this particular case involves a sale of bunk [fake] dope. . . . Now, certainly the Court would be the first to recognize that this is still a dangerous situation. It involves all the things described here by the [district attorney], the potential for violence, the potential arguments over drug sales. It's an illegal activity that encourages the other drug sales, so there's no question that the matter is a serious violation."

Additionally, the trial court's observation that the current offense did not involve the sale of a controlled substance does not mitigate it; otherwise, defendant's deceit as to the identity of the substance sold would be oddly considered a mitigating factor. It would also wrongly suggest that an element inherent in this felony—the false representation—somehow makes this felony less deserving of treatment under the Three Strikes law—which would rewrite the statute since it allows any felony to trigger its sentencing scheme where the defendant already has a strike.

Finally, this was the same type of offense of which defendant had been convicted in 1991 (see fn. 7, *ante*), which suggests that defendant had not learned from his earlier conviction.

Thus, while we do not preclude the possibility that the circumstances surrounding a felony could take it outside the spirit of the law, this is not such a case.

---

[38]Sections 667, subdivision (c), and 1170.12, subdivision (a).

[39]Section 667, subdivision (b).

*Reason No. 2: Age.*

The next reason—that 41-year-old defendant had reached an age "where statistically he poses a reduced risk to society"—cannot take defendant outside the spirit of the Three Strikes law.

While some courts, in considering whether to dismiss a strike, have considered age in conjunction with the length of the sentence and the defendant's prospects,[40] middle age, considered alone, does not remove a defendant from the spirit of the Three Strikes law. Otherwise, those criminals with the longest criminal records over the longest period of time would have a built-in argument that the very factor that takes them within the spirit of the Three Strikes law—a lengthy criminal career—has the inevitable consequence—middle age—that takes them outside the law's spirit.

Indeed, the fact that defendant's prior violent strike—assault with a deadly weapon—came relatively later in defendant's life (he was 38 in 1996) contravenes the trial court's conclusion that at age 41, defendant was less likely to pose a risk to society—a proposition for which there was no evidentiary basis in the record. (See, e.g., *Williams, supra,* 17 Cal.4th at pp. 163-164 [defendant's conviction of misdemeanor spousal battery three months before committing his current offense belied the assertion that defendant had become less violent with age].)

Finally, reliance on a statistical assumption would appear to clash with the obligation in *Williams* to review the defendant's individual circumstances for purposes of determining whether he is one of the exceptions who should be deemed outside the spirit of the law.

*Reason No. 3: Defendant's Record Is Devoid of Violence Except for the Strike.*

The next reason—that the "defendant's record is devoid of violence . . . except for the strike, which did not involve a firearm"—cannot, in and of itself, take him outside the spirit of the Three Strikes law when the defendant is a career criminal with a long and continuous criminal history.

The Three Strikes law only requires *one* prior serious or violent felony conviction to trigger its directive to double "the term otherwise provided as

[40]See *People v. Gaston, supra,* 74 Cal.App.4th at pages 321-322; *Bishop, supra,* 56 Cal.App.4th at page 1251.

punishment for the current felony conviction."[41] Had defendant not had a 22-year criminal history, but only a recent violent assault, soon followed by another felony while still on parole, surely, defendant would come within both the letter and the spirit of the Three Strikes law. The fact that defendant preceded his violent assault with 19 years of felony and misdemeanor convictions (and followed it with more convictions) certainly does not argue that defendant falls outside the spirit of the law.

Further, the probation report, while lacking details, reveals that the 1996 assault was not isolated. Defendant was convicted of misdemeanor assault with a deadly weapon in 1990 and charged again with this offense while in custody after his 1996 conviction. Nor do we understand how the use of a knife, rather than a firearm, mitigates the violence of the assault for purposes of the Three Strikes law.

*Reason No. 4: No Firearms.*

The next reason—that defendant has "no record of firearm use or possession"—cannot take defendant outside the spirit of the law. Neither the letter nor spirit of the law limits its reach to those who use or possess a firearm.

*Reasons Nos. 5 & 6: Record of Thefts and Drug Offenses.*

Reasons five and six were that defendant's record "consists of petty acquisitive offenses and substance abuse" and that his prior strike "appears to be out of character."

Again, the fact that the one felony conviction that qualified for Three Strikes treatment was part of a lengthy and continuous criminal history that included 12 misdemeanors and five other felonies that did not qualify as strikes, does not remove defendant from the spirit of the Three Strikes law. To the contrary, defendant's graduation from solely misdemeanors in the 1980's to felonies and misdemeanors in the 1990's suggests that defendant's character was changing for the worse.

We conclude that defendant's lengthy criminal record, including 12 misdemeanors within a 22-year period and six felonies within the past eight years, including a recent, violent assault that qualified as a strike, and a current felony that was committed while defendant was still on parole from his strike, squarely brought defendant within both the letter and spirit of the Three Strikes law.

---

[41]Sections 667, subdivision (e)(1), and 1170.12, subdivision (c)(1).

## F. *Remand*

The People contend that the "case should be remanded to have the charged prior reinstated and . . . have the sentence doubled." In contrast, defendant advocates remand to the court to "reconsider its ruling," although defendant concedes that the trial court advised him that his sentence would be doubled if we reversed its order.

The People have the better argument. The trial judge articulated at length the reasons in support of his decision to dismiss defendant's strike, which order we now reverse. To the extent defendant intends to suggest that the trial court search for new and different reasons to dismiss defendant's strike, we reject this as an idle exercise based on his record. As noted, a career criminal who falls within the letter of the Three Strikes law—which was meant to apply to career criminals—should be deemed outside its spirit only in extraordinary circumstances. Our review of defendant's circumstances, including his 22-year criminal record of 12 misdemeanors and six more recent felonies, convinces us that it would be a manifest abuse of discretion to find him outside the law's spirit; therefore, the matter will be remanded to reinstate the finding of the prior conviction and resentence defendant accordingly.[42]

## IV. DISPOSITION

The order striking the finding of defendant's 1996 conviction for assault with a deadly weapon is reversed. The matter is remanded with directions to reinstate that finding and to resentence defendant as a person who has suffered a prior serious felony conviction. We also note that the trial court failed to impose the mandatory parole revocation fine under section 1202.45 at the original sentencing hearing, which should be ordered at resentencing. (See *People v. Smith* (2001) 24 Cal.4th 849 [102 Cal.Rptr.2d 731, 14 P.3d 942].) In all other respects, the judgment is affirmed.

Morrison, J., concurred. Blease, Acting P. J., concurred in the result.

Respondent's petition for review by the Supreme Court was denied June 13, 2001. Kennard, J., was of the opinion that the petition should be granted.

---

[42]See *People v. Gaston, supra,* 74 Cal.App.4th at page 323; *People v. DeGuzman, supra,* 49 Cal.App.4th at page 1055.