Filed 11/24/20  P. v. Nelson CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>FLOYD NELSON,<br><br>　　Defendant and Appellant. | B301575<br><br>(Los Angeles County<br>Super. Ct. No. BA343411-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Floyd Nelson of conspiracy to commit robbery, attempted robbery, and possession of a firearm by a felon. (Pen. Code, §§ 182, 211, 664, & former § 12021.)[1]  Nelson contends the trial court abused its discretion by refusing to strike or dismiss firearm and serious felony enhancements.  We disagree, and affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*[2]

Between October 2007 and May 2008, Alonzo Harris, sometimes assisted by an accomplice, committed a series of robberies or attempted robberies and associated crimes at 11 Los Angeles area stores and one restaurant.  Detective Tracey Benjamin began investigating the robberies, which had been nicknamed "The Morning Masked Bandits" case, in November 2007.  Through that investigation, Detective Benjamin identified

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We derive the factual and procedural background from our prior opinions in this case and the record in Nelson's direct appeal, of which we take judicial notice at appellant's request. (*People v. Harris* (Dec. 20, 2018, B257675) [nonpub. opn.]; *People v. Harris* (Aug. 20, 2018, B257675) [nonpub. opn.]; *People v. Harris* (Aug. 29, 2017, B257675) [nonpub. opn.]; Evid. Code, §§ 452, subd. (d), 459.)  We deny appellant's request that we take judicial notice of our opinion filed March 26, 2018, as we granted rehearing after issuance of that opinion, which was superseded by our August 20, 2018 opinion.  (See Cal. Rules of Court, rule 8.268(d) [order granting petition for rehearing vacates the opinion].)  We grant the People's motion to augment the record with portions of the record in case No. B257675.

Harris as a suspect. Beginning in May 2008, a team of detectives began a 27-day surveillance of him. On 12 of those days, Harris spent time with appellant Nelson, visiting over 60 different businesses. Nelson and Harris appeared to be casing the businesses, rather than shopping.

Starting at about midnight on July 11, 2008, the surveillance team followed Harris and Nelson to various businesses: a K-mart, a Vallarta market, a Gelson's market, a Marshall's store, and finally, at approximately 5:30 a.m., a Lawry's Prime Rib restaurant located in Beverly Hills. The restaurant was not open for business at the time. Walter Eckstein was inside the restaurant, working as the executive chef. When an employee briefly exited the restaurant and then went back inside, Harris and Nelson entered through the same door. Nelson carried a black duffel bag. Harris and Nelson came back out of the restaurant, hid behind some dumpsters, and then reentered. Eckstein observed one of them come through the door, holding a gun; the other grabbed Eckstein from behind and put a gun to his forehead. Eckstein was ordered to open the safe, but said he could not. Harris and Nelson forced Eckstein to lie on the floor and one of them tried to tie his hands, but failed. Harris and Nelson exited the restaurant and ran to Harris's truck. Nelson threw the black bag into the back of the truck, and they drove off.

Police officers stopped Harris's truck shortly thereafter. Harris pointed a firearm at an officer and a gunfight ensued, during which Nelson was injured. The defendants were arrested. Harris had a handgun in his waistband. In the bed of the truck, police found a black bag, which contained 10 zip ties and a second handgun. Inside the truck's passenger compartment police found

a bag containing a pair of gloves; three black half-masks that would "cover[ ] the lower portion of the face"; a black hoodie sweatshirt; black and white zip ties; and more gloves.

2. *Procedure*

a. *Nelson's conviction and the original sentence*

Nelson was convicted of conspiracy to commit robbery, attempted second degree robbery, and possession of a firearm by a felon. (§§ 182, 211, 664, & former § 12021.)[3] The jury also found true personal firearm use enhancements as to the conspiracy count (§ 12022.5, subd. (a)) and the attempted robbery (§ 12022.53, subd. (b)). As relevant here, the trial court found Nelson had suffered three serious felony convictions (§ 667, subd. (a)) as well as numerous other felony convictions. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) It sentenced Nelson to a term of 50 years to life, as follows: on count 2, the attempted robbery, 25 years to life pursuant to the Three Strikes law, plus three 667, subdivision (a) five-year serious felony enhancements, plus a 10-year firearm enhancement pursuant to section 12022.53, subdivision (b). It stayed sentence on count 1, including a section 12022.5 firearm enhancement, pursuant to section 654, and imposed a concurrent sentence on the felon in possession of a firearm count.

b. *Nelson's appeals*

In an unpublished opinion filed on August 29, 2017, we affirmed Nelson's convictions, but found the trial court had erred by imposing two out of three section 667, subdivision (a) serious felony enhancements, because they had not been properly pled. We modified the judgment by striking the two enhancements,

---

[3]     Harris was convicted of these and additional crimes. He died in prison in 2018, and consequently we dismissed his appeal.

4

affirmed it as modified, and remanded to the trial court for resentencing. At a hearing conducted on November 15, 2017, the trial court resentenced Nelson to 25 years to life on the attempted robbery pursuant to the Three Strikes law, plus one 5-year section 667, subdivision (a) serious felony enhancement, plus a 10-year, section 12022.53, subdivision (b) firearm enhancement. The court again stayed sentence on the conspiracy charge pursuant to section 654, but imposed a consecutive four-year sentence on the felon in possession of a firearm count.

Thereafter, our Supreme Court granted Nelson's petition for review and transferred the matter back to us with directions to reconsider the cause in light of the enactment of Senate Bill No. 620 (Senate Bill 620), which took effect during the pendency of Nelson's appeal and gave trial courts discretion to strike or dismiss firearm enhancements. In an unpublished opinion issued on August 20, 2018, we affirmed Nelson's convictions but vacated his sentence and remanded for resentencing.

The Supreme Court granted Nelson's subsequent petition for review and directed us to reconsider the cause in light of then-recent Senate Bill No. 1393, which gave trial courts discretion to strike or dismiss serious felony enhancements imposed pursuant to section 667, subdivision (a). In an unpublished opinion issued on December 20, 2018, we affirmed Nelson's convictions but vacated his sentence and remanded for resentencing.

c. *August 2019 resentencing*

On August 7, 2019, the trial court held a resentencing hearing. It declined Nelson's requests to strike the firearm enhancements and the one remaining serious felony enhancement. Defense counsel argued that Nelson's age, 60 years old at the time of the resentencing, made it statistically

5

unlikely he would reoffend, and he would serve a substantial sentence even if the enhancements were stricken. The People argued that Nelson's prior record was "substantial," and he had "essentially lived his life in and out of prison and committing robberies . . . ."

The trial court expressly recognized it had discretion to strike the enhancements, but declined to do so based on the facts of the current offense and Nelson's serious criminal history. The court explained: "After reviewing the facts of the case, defendant's prior record, and the serious nature of the robbery at Lawry's," it would not exercise its discretion to strike the enhancements. "The biggest reason the court has made this decision is the criminal history of this defendant. He is a recidivist and poster child for the Three Strikes law." The court observed that in 1978, Nelson was convicted of robbery and was sentenced to three years in prison. In 1981, he was again convicted of robbery, and was sentenced to 10 years in prison. In 1989, he was charged with robbery but pled to possession of a firearm by a felon, and was sentenced to 16 months. In 1990, he was convicted of four counts of assault with a firearm and four counts of robbery, and was sentenced to 28 years. At the time he committed the attempted robbery at Lawry's, he had been out of prison for approximately nine months. The court opined, "Nelson has a profession like I have a profession as a judge. He is a professional robber." Moreover, the court observed that in the current offense, Nelson was carrying a firearm in his bag.

The court expressly recognized, as mitigating factors, that no one was hurt during the Lawry's incident, and Nelson was shot during the shootout between Harris and police. The court also opined that Nelson was "a smart guy and could have done so

6

much more with his life." However, the court concluded, "I can't ignore this record. There is hardly any crime-free time in Mr. Nelson's life . . . ." "The scales of justice do not lean towards Mr. Nelson, and so I'm declining to exercise any discretion."

Nelson timely appealed.

## DISCUSSION

*The trial court's ruling was not an abuse of discretion*

Nelson argues that the trial court's refusal to exercise its discretion to strike the firearm and serious felony enhancements was an abuse of discretion. We disagree.

We review a trial court's discretionary decision to strike or dismiss a sentencing allegation under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373; *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 [considering court's denial of request to strike firearm enhancement pursuant to Senate Bill 620]; *People v. Shaw* (Oct. 26, 2020, D076124) __ Cal.App.5th __ [2020 Cal.App.Lexis 1007] [abuse of discretion standard applies to trial court's denial of request to strike serious felony enhancement pursuant to Senate Bill 1393]; *People v. Brooks* (2020) 53 Cal.App.5th 919, 926–927.) " 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] Second, a " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in

7

substituting its judgment for the judgment of the trial judge." ' " [Citation.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Pearson,* at p. 116.)  Unless the record affirmatively reflects otherwise, we presume the trial court considered the relevant sentencing factors listed in the California Rules of Court.  (*Id.* at p. 117; see Cal. Rules of Court, rules 4.409, 4.428(b), 4.410. 4.421, & 4.423.)

No abuse of discretion is apparent here.  The trial court appropriately considered Nelson's criminal history, the facts of the offense, and the few mitigating factors that existed. California Rules of Court, rule 4.409, provides, "[r]elevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise."  Among the aggravating factors listed in California Rules of Court, rule 4.421, are those relating to the crime, including that the defendant was armed with or used a weapon and that the manner in which the crime was carried out indicated planning, sophistication or professionalism.  Both these factors existed here.  Nelson carried a gun into the restaurant, and used it against the victim.  Nelson and Harris extensively planned the offense:  they cased numerous businesses and brought firearms, zip ties, and masks with them.

Circumstances in aggravation also include factors relating to the defendant, including that he has engaged in violent conduct indicating a serious danger to society; his convictions as an adult are numerous or of increasing seriousness; and he has served a prior prison term.  (Cal. Rules of Court, rule 4.421(b).)

Armed robbery presents a danger to society, as did Nelson's earlier robbery and assault with a firearm offenses. Nelson's criminal history, as recited by the trial court, was lengthy and serious.

Of the 15 mitigating circumstances listed in California Rules of Court, rule 4.423, only a single one exists here:  that the victim was not actually harmed. (Rule 4.423(a)(6).)  The trial court expressly considered this factor, and found it did not outweigh the aggravating circumstances. Nelson's age was the primary—indeed, the only—mitigating circumstance argued by defense counsel. We have no reason to believe the trial court ignored this circumstance. The fact the court rejected defense counsel's argument does not mean the court failed to consider Nelson's age. In short, the court's ruling was neither arbitrary nor capricious, and no abuse of discretion is apparent.

Nelson argues that the trial court abused its discretion for several reasons, none persuasive. First, he argues that the trial court improperly based its decision "exclusively" on his prior record. As we have explained, it did not. Citing *People v. Superior Court (Alvarez )* (1997) 14 Cal.4th 968 (*Alvarez*) and *People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*), Nelson argues that it is improper for a trial court to "plac[e] undue emphasis on the defendant's prior record and recidivism."

*Alvarez* and *Garcia* do not stand for this proposition. *Alvarez* considered the scope of the trial court's discretion to reduce an offense, originally charged as a felony under the Three Strikes law, to a misdemeanor. (*Alvarez, supra*, 14 Cal.4th at pp. 972–973.)  Rejecting the People's argument that there should be a "nonstatutory presumption against reducing wobblers in three strikes cases," the court reasoned that to "judicially

9

mandate that a single factor predominate the trial court's exercise of discretion would eviscerate the essence of its statutory authority; indeed, it would be one step shy of declaring the three strikes law eliminates the court's discretion entirely." (*Id.* at p. 979.) *Alvarez* concluded that "courts continue to have broad authority the exercise of which should be reviewed in accordance with the generally applicable standard. *While a defendant's recidivist status is undeniably relevant, it is not singularly dispositive.*" (*Id.* at p. 973, italics added.) "A necessary concomitant of this authority is the discretion to weigh the various sentencing considerations commensurate with the individual circumstances. [Citations.] For that reason, the fact a wobbler offense originated as a three strikes filing will not invariably or inevitably militate against reducing the charge to a misdemeanor." (*Id.* at p. 979.)

In other words, *Alvarez* held that despite a defendant's recidivism and the Three Strikes law's goal of ensuring longer sentences for recidivists, trial courts retain discretion to reduce offenses to misdemeanors. By using the language italicized above, *Alvarez* did not indicate that when exercising its discretion, a court is *prohibited* from giving preponderant weight to a defendant's criminal history, just that it is not *required* to do so. In fact, a court " 'must accord 'preponderant weight . . . to factors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects.' " (*Garcia, supra*, 20 Cal.4th at pp. 498–499, quoting *People v. Williams* (1998) 17 Cal.4th 148, 161.)

The issue in *Garcia* was whether a trial court was permitted to strike a prior "strike" allegation as to one count, but not another. (*Garcia, supra*, 20 Cal.4th at pp. 492–493, 496.) In considering the People's argument that the primary purpose of the Three Strikes law was to ensure longer prison sentences, *Garcia* reasoned that "this purpose is not a mantra that the prosecution can invoke in any Three Strikes case to compel the court to construe the statute so as to impose the longest possible sentence." (*Id.* at p. 501.) In support of this conclusion, *Garcia* cited *Alvarez's* point that while a defendant's recidivist status is relevant, it is not " 'singularly dispositive.' " (*Ibid.*)

In short, these cases do not stand for the proposition that a trial court cannot assign preponderant weight to a defendant's criminal history when deciding whether to strike or dismiss an enhancement. And, contrary to Nelson's argument, we do not view the trial court's comments as indicating it believed Nelson was unentitled to relief as a matter of law, thereby depriving him of individualized sentencing consideration. " '[A] court abuses its discretion if it dismisses a case, or strikes [or vacates] a sentencing allegation [or finding], solely "to accommodate judicial convenience or because of court congestion." . . . A court also abuses its discretion by dismissing a case, or a sentencing allegation [or finding], simply because a defendant pleads guilty. . . . Nor would a court act properly if "guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant," while ignoring "defendant's background," "the nature of his present offenses," and other "individualized considerations." ' " (*People v. Williams, supra*, 17 Cal.4th at p. 159.) The trial court here did not consider such impermissible non-individualized factors, but instead based its decision on

11

precisely the type of "individualized considerations" referenced by *Williams.*

Second, Nelson argues that the court "failed to afford full mitigating weight" to his age, 60 at the time of sentencing. Although Nelson references "mitigating *aspects* of [his] background" (italics added), he points to no purportedly mitigating factor other than age, nor did his counsel below alert the court to any other additional circumstance. Instead, his argument is entirely based upon his age. But advanced age alone is not necessarily a mitigating factor, and did not here require that the trial court strike the enhancements. "While some courts, in considering whether to dismiss a strike, have considered age in conjunction with the length of the sentence and the defendant's prospects, middle age, considered alone, does not remove a defendant from the spirit of the Three Strikes law. Otherwise, those criminals with the longest criminal records over the longest period of time would have a built-in argument that the very factor that takes them within the spirit of the Three Strikes law—a lengthy criminal career—has the inevitable consequence—middle age—that takes them outside the law's spirit." (*People v. Strong* (2001) 87 Cal.App.4th 328, 345, internal fn. omitted; cf. *People v. Babbitt* (1988) 45 Cal.3d 660, 716 [for purposes of penalty phase in capital case, age is neither a mitigating nor an aggravating factor]; *People v. Williams*, *supra*, 17 Cal.4th at p. 163 [lapse of 13 years between appellant's prior and current felonies was not significant where he did not refrain from criminal activity during that period and "did not add maturity to age."].) The same is true here in regard to striking the enhancements.

Moreover, Nelson was approximately 49 years old when he committed the Lawry's crimes. As the court recounted, Nelson has committed repeated robberies throughout his entire life. (See *People v. Strong, supra*, 87 Cal.App.4th at p. 345 [fact that defendant's prior violent strike was committed when he was 38 contravened the conclusion that at age 41, he was less likely to pose a risk to society].) The trial court was not required to strike the enhancements simply because Nelson was 60 years old.

Nelson's reliance on *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) for the proposition that the court "must give full mitigating weight to the defendant's age," is inapt. *Graham* concluded that, under the Eighth Amendment, juvenile offenders could not be sentenced to life in prison without the possibility of parole for a nonhomicide crime. (*Id.* at pp. 52–53, 74.) The court's analysis was based, among other things, on the facts that as compared to adults, juveniles are less culpable; they lack maturity, are more vulnerable to negative influences and outside pressures, and their characters are not as well formed. (*Id.* at p. 68.) "A juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.' [Citation.]" (*Ibid.*) Obviously, these concerns are absent here: Nelson was an adult, not a juvenile; his character as a professional criminal appears to have been fully formed over many years; and his offenses were not less morally reprehensible simply because he had reached the age of 60.

Nor does *People v. LaBlanc* (2015) 238 Cal.App.4th 1059 assist Nelson. That case concerned a petition by a sexually violent predator (SVP) for unconditional discharge, which the trial court dismissed as frivolous. (*Id.* at pp. 1062–1063.) The 70-year old petitioner suffered from a plethora of medical conditions

13

that, in the opinion of an expert, reduced his recidivist rate to " 'almost nonexistent.' " (*Id.* at pp. 1068, 1077.) *LaBlanc* reasoned that "advanced age and onset of serious medical conditions of an SVP are potentially relevant factors in determining whether a petition for unconditional release is frivolous, because various studies have concluded that recidivism rates decrease significantly among older male sex offenders." (*Id.* at p. 1076.) Accordingly, these factors, as set forth in the expert's opinion, provided a "colorable showing" entitling the defendant to an evidentiary hearing. (*Id.* at p. 1077.) As is readily apparent, *LeBlanc* is factually and procedurally distinguishable from the instant matter. The *LaBlanc* court did not suggest a trial court ruling on a motion to strike enhancements is required to treat age as the paramount, overriding factor in its calculus.

Finally, Nelson argues that in this court's March 26, 2018 opinion in this case, we held that codefendant Harris's case did not need to be remanded for resentencing because "relief was unavailable to Harris as a matter of law," whereas in Nelson's case, we remanded for resentencing, "in effect acknowledg[ing] that [Nelson's] record was not so egregious that he should be denied the benefits of ameliorative legislation as a matter of law." But we granted rehearing after issuing our March 26, 2018 opinion, which was therefore vacated. (See Cal. Rules of Court, rule 8.268(d) ["An order granting a rehearing vacates the decision and any opinion filed in the case and sets the cause at large in the Court of Appeal."].)[4] Reliance on this opinion is therefore misplaced.

---

[4]     Even if the March 26, 2018 opinion were still extant, Nelson misconstrues it. We reasoned that remand was

14

In sum, the trial court's ruling was neither arbitrary nor capricious, and did not constitute an abuse of discretion.[5]

unnecessary in Harris's case because the trial court's comments at sentencing indicated it would not have stricken the enhancements, even had it possessed the discretion to do so, *not* because he was ineligible "as a matter of law," as Nelson avers. And nothing in our opinion "acknowledged" or implied that the trial court should strike Nelson's enhancements; we expressly offered no opinion on the matter.

[5]     Nelson states in passing that the denial of his "*Romero* motion" (*sic*) infringed his state and federal rights to due process and to be free of cruel or unusual punishment. We do not understand Nelson to assert these constitutional claims as separate bases for relief. To the extent he seeks to assert a claim that his sentence constitutes cruel or unusual punishment, he has failed to offer authority or reasoned argument on the question, and any such contention is waived. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37 [contention perfunctorily asserted without analysis or argument rejected as not properly raised]; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1543, fn. 3 [argument waived where asserted without pertinent argument or citation to applicable authority]; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4.)

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.

DHANIDINA, J.