Filed 9/28/20  P. v. Semlinger CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MARK STEVEN SEMLINGER,<br><br>  Defendant and Appellant. | 2d Crim. No. B296258<br>(Super. Ct. No. 2016019907)<br>(Ventura County) |

A jury found Mark Steven Semlinger guilty of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)) and a misdemeanor battery (§ 243, subd. (e)(1)).  The trial court found that Semlinger had previously been convicted of a serious felony, (§ 667, subd. (a)(1)), and that the previous conviction constituted a strike within the meaning of the three strikes law (§§ 667, subds. (c)(1) & (e)(1); 1170.12, subds. (a)(1) & (c)(1)).

---

[1] All statutory references are to the Penal Code unless otherwise stated.

The trial court sentenced Semlinger to the low term of two years for the assault, doubled to four years under the three strikes law, plus a consecutive five years for the prior serious felony conviction, for a total of nine years. The court sentenced Semlinger to a concurrent term of 90 days on the misdemeanor. We affirm.

FACTS

Richard Weyrauch owned a house in Simi Valley. Weyrauch rented rooms in the house. On May 21, 2016, James Williams, Heather Nesbitt, and her young child were among those living in the house with Weyrauch. Semlinger did not live there. Nesbitt was Semlinger's fiancée and the young child was theirs.

On the night of May 21, 2016, Nesbitt and Semlinger were arguing loudly outside the house. Nesbitt had asked Semlinger not to come to the house, but Semlinger wanted to see his child. The argument could be heard inside. Weyrauch turned on security cameras that were positioned around the outside of his home. Weyrauch and Williams went out to the front porch to try to get the couple to stop arguing. They were not successful, and the arguing continued.

Semlinger grabbed Nesbitt and dragged her across the driveway and away from the house. Semlinger is six feet one inch tall and weighs 200 pounds. Nesbitt is five feet three inches tall and weighs 130 pounds.

Williams, who was in the house watching through the security cameras, became agitated. Weyrauch warned Williams to stay out of the argument. Nevertheless, Williams came out of the house hollering. Williams punched Semlinger in the face and

2

the two fought.  During the fight, Semlinger took a knife from his pocket and began swinging it at Williams and Williams retreated.

Weyrauch called 911.  A police officer responded.  During the officer's investigation, he found a black folding knife on an outside pillar one residence away from Weyrauch's house. Semlinger's DNA was on the knife.  Williams had a bump and a small cut on his head, but the officer did not notice any blood on the knife.

Williams died of an unrelated cause prior to trial.

DISCUSSION

I.

*Mutual Combat Instruction*

Semlinger contends the trial court erred in giving a mutual combat instruction.

Over Semlinger's objection, the trial court instructed the jury with CALCRIM No. 3471 as follows: "A person who engages in mutual combat or who starts a fight has a right to self-defense only if:  [¶]  One, he actually and in good faith tried to stop fighting.  [¶]  Two, he indicated by word or conduct to his opponent in a way that a reasonable person would understand that he wanted to stop fighting and that he had stopped fighting. [¶]  Three, he gave his opponent a chance to stop fighting.  [¶]  If the defendant meets these requirements, he then has a right to self-defense if the opponent continued to fight.  [¶]  A fight is mutual combat when it began or continued by mutual consent or agreement.  That agreement must be expressly stated or implied and must occur before the claim of self-defense arose."

Semlinger argues there is no substantial evidence of mutual combat.  He cites *People v. Ross* (2007) 155 Cal.App.4th 1033, 1047.  There the court stated that for a mutual combat

3

instruction, "there must be evidence from which the jury could reasonably find that *both combatants actually consented or intended to fight before the claimed occasion for self-defense arose*." Semlinger claims a mutual combat instruction is not supported by the facts of this case because there was no evidence of a prior mutual agreement to fight. Semlinger argues that Williams initiated the fight.

But the agreement need not exist prior to the fight. It only needs to exist before the claimed occasion for self-defense arose. The prosecution's theory was that Williams had a lawful right to throw the first punch in defense of Nesbitt. Semlinger had no right to claim self-defense arising from that punch. The fight that ensued thereafter could be viewed as by the mutual consent of the combatants.

If the prosecution's theory is a bit too tenuous, any error in giving the instruction was harmless. We presume the jury followed the instruction. (*People v. Lopez* (2020) 46 Cal.App.5th 505, 525.) Here the jury was properly instructed with CALCRIM No. 3471 that for mutual combat the agreement must occur before the claim of self-defense arose. If, as Semlinger argues, there was no evidence of mutual combat, the jury would consider the instruction inapplicable. The jury was instructed that some of the instructions may not apply depending on the findings of fact, and to follow the instructions that do apply. (CALCRIM No. 200.)

An instruction not supported by the evidence is subject to the harmless error analysis in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.) Here it is not reasonably probable that Semlinger would have obtained a more favorable result had the instruction not been given.

Semlinger's reliance on *People v. Ross, supra,* 155 Cal.App.4th 1033, is misplaced.  In *Ross,* the trial court did not instruct the jury on the meaning of mutual combat.  Here the jury was properly instructed.

## II.

### *Trespass Instruction*

Semlinger contends the trial court erred in giving CALCRIM No. 3475, instructing on the right of an occupier of a home to use reasonable force to make a trespasser leave.  Semlinger claims the instruction was not applicable because he was not a trespasser.

Entry or remaining on any residential place without the consent of the owner or a person in lawful possession constitutes a trespass.  (§ 602.5, subd. (a).)

Semlinger argues his fiancée, child, sister, and friends lived at the house.  But he cites no authority for the proposition that having friends or relatives living on the property excuses a trespass.  He also argues that he remained outside the house in an area understood to be where members of the public such as salespersons and religious advocates are invited.  But he was not on the property as a salesperson or religious advocate.  He was arguing with his fiancée.  He was not invited to be on the premises for that purpose.

The jury could reasonably conclude that Semlinger did not enter the property with anyone's express or implied consent, but to confront his fiancée about seeing his child against his fiancée's wishes.  The jury could also conclude that he was not welcome there for that purpose.  Nesbitt had asked that he not come to the house.  If Semlinger had any doubt about his status as a trespasser, it should have been dispelled when Weyrauch and

Williams yelled at Semlinger from the front porch to stop arguing. Nevertheless, Semlinger remained on the premises and continued arguing.

There was substantial evidence to support giving CALCRIM No. 3475.

## III.

### *Self-defense*

Semlinger contends there is no substantial evidence that he was not acting in self-defense.

The jury was instructed that to find Semlinger guilty of assault with a deadly weapon, the prosecution must prove he did not act in self-defense. (CALCRIM No. 875.) The jury was also instructed that the defendant acted in self-defense if: he reasonably believed that he was in imminent danger of suffering bodily injury or being touched unlawfully; he reasonably believed that the immediate use of force was necessary to defend against that danger; and he used no more force than was necessary to defend against that danger. (CALCRIM No. 3470.)

Semlinger argues that he reasonably believed that the immediate use of force was necessary because he had just been punched in the face, and that he used no more than was necessary because Williams was bigger than he was and he did not stab Williams.

Semlinger's argument is based on a view of the evidence most favorable to himself. But that is not how we view the evidence. We view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the crime beyond a reasonable doubt. (*People v. Earp* (1999) 20 Cal.4th 826, 887.) That the evidence might reasonably

6

be reconciled with a contrary finding does not render the evidence insubstantial. (*Id*. at pp. 887-888.)

Here, although Williams might have outweighed Semlinger, Semlinger was not a small man. He was six feet one inch tall and weighed 200 pounds. Williams was unarmed. If the jury concluded Semlinger needed to defend himself, it could reasonably conclude he used more force than necessary when he brought a knife to a fist fight.

Semlinger's reliance on *People v. King* (1978) 22 Cal.3d 12 is misplaced. In *King*, the trial court refused to give a self-defense instruction. Our Supreme Court reversed, holding that substantial evidence supported the instruction. (*Id*. at p. 27.)

Here, unlike in *King*, the trial court instructed on self-defense. The jury simply did not find the evidence credible.

IV.

*Evidence of Deadly Weapon*

Semlinger contends there is no substantial evidence to support a finding of an assault with a deadly weapon. He claims the video's quality is too poor to see whether he had an open knife.

But a knife with Semlinger's DNA on it was found one house from the fight scene. In addition, if the jury did not clearly see an open knife, it could determine from the way the combatants were moving that Semlinger was threatening Williams with an open knife.

7

## V.
### *911 Call*

Semlinger contends the statement from the 911 call that he has a knife should not have been admitted into evidence.

During the 911 call, Weyrauch told the operator that Semlinger has a knife. Weyrauch said he did not see the knife, but that someone told him Semlinger has one. Semlinger argues the statement was inadmissible under the spontaneous statement exception to the hearsay rule. (Evid. Code, § 1240.)

Even assuming the evidence was inadmissible, any error was harmless. The jury saw the security video of the fight. It could determine for itself whether Semlinger had a knife. Moreover, a knife with Semlinger's DNA on it was found one house away from the scene of the fight.

## VI.
### *Sentencing*

Semlinger contends the trial court abused its discretion in declining to reduce the charge of an assault with a deadly weapon to a misdemeanor; in declining to strike his prior conviction for purposes of the three strikes law; and in declining to strike his five-year enhancement for a prior serious felony conviction pursuant to section 667, subdivision (a).

### (a) *Reduce to misdemeanor*

Section 245, subdivision (a)(1) is a "wobbler"; that is, it can be punished either as a felony or misdemeanor. Section 17, subdivision (b) gives the trial court the discretion to treat the offense as a misdemeanor. In exercising its discretion under section 17, subdivision (b), the court may consider the facts surrounding the offense and the character of the offender. (*People v. Tran* (2015) 242 Cal.App.4th 877, 885.)

8

Semlinger points out that he did not harm Williams with the knife. That is undoubtedly why the court imposed the low term for the offense. But it does not require the court to reduce the offense to a misdemeanor. The court may also consider the character of the offender.

At the sentencing hearing, the trial court noted that Semlinger had a 24-year history of contact with the criminal justice system with 23 prior convictions dating from 1995. The court acknowledged that some of the convictions occurred when Semlinger was very young, and some were for drug offenses that would be misdemeanors today. The court stated, "But that doesn't change the fact that it is a long body of work." The court also noted that Semlinger was facing sentencing on two unrelated charges.

The record shows that the trial court thoroughly considered all the facts, and had a rational basis for denying Semlinger's section 17, subdivision (b) motion. The court did not abuse its discretion.

*(b) Second strike*

Semlinger has a prior serious felony conviction, a first degree burglary. (§ 1192.7, subd. (c)(1)(18).) Under the three strikes law, the trial court must double the term of the current offense. (§§ 667, subd. (e)(1); 1170.12, subd. (c)(1).)

The trial court, however, has the discretion to strike the prior felony conviction in the interest of justice. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.) In deciding whether to strike the prior conviction, the court must consider the defendant's present felony conviction, his prior convictions, and his character to determine whether he may be deemed outside the spirit of the three strikes law. (*People v. Williams*

9

(1998) 17 Cal.4th 148, 161.) The spirit of the three strikes law is to ensure longer prison sentences for those who commit a felony and who have previously been convicted of a serious or violent felony. (*People v. Strong* (2001) 87 Cal.App.4th 328, 337.) Semlinger's lengthy and almost unbroken history of criminal convictions shows he is not outside the spirit of the three strikes law. (*Id*. at pp. 331-332 [a defendant who falls within the letter of the three strikes law does not take himself outside its spirit by the commission of a virtually uninterrupted series of nonviolent felonies and misdemeanors over a lengthy period].)

*(c) Prior serious felony*

Section 667, subdivision (a)(1) provides a five-year sentence enhancement for each prior serious felony conviction. The trial court has the discretion to strike the enhancement. But for the reasons previously stated, it did not abuse its discretion in refusing to do so.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Scott H. Bentley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.