Filed 5/25/21  P. v. Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICKY RAY REYES,<br><br>    Defendant and Appellant. | H047416<br>(Santa Clara County<br>Super. Ct. No. C1774770) |

Defendant Ricky Ray Reyes appeals after pleading no contest to four charges: possession for sale of phencyclidine (PCP) (Health & Saf. Code, § 11378.5), possession for sale of methamphetamine (Health & Saf. Code, § 11378), possession of methamphetamine with a prior (Health & Saf. Code, § 11377, subd. (a)), and possession for sale of marijuana with a prior (Health & Saf. Code, § 11359, subd. (c)(1)). Defendant admitted he had a prior conviction that qualified as a strike. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)

After denying defendant's *Romero* motion to dismiss the strike (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), the trial court imposed the low term of three years, doubled to six years pursuant to the Three Strikes law, for the possession for sale of PCP conviction. The trial court imposed concurrent terms for the other three convictions.

On appeal, defendant contends the trial court abused its discretion by denying the *Romero* motion because the trial court incorrectly believed it could not consider

defendant's physical health or "how undergoing treatment for Stage IV cancer had made him want to change his life."

For reasons that we will explain, we will affirm the judgment.

## I. BACKGROUND

### A. *Charges and Pleas*

A complaint was filed charging defendant with possession for sale of PCP (count 1; Health & Saf. Code, § 11378.5), possession for sale of cocaine base (count 2; Health & Saf. Code, § 11351.5), possession for sale of methamphetamine (count 3; Health & Saf. Code, § 11378), possession of methamphetamine with a prior (count 4; Health & Saf. Code, § 11377, subd. (a)), and possession for sale of marijuana with a prior (count 5; Health & Saf. Code, § 11359, subd. (c)(1)). The offenses were all alleged to have occurred in July 2017. The complaint alleged that defendant had a prior conviction that qualified as a strike (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and a prior narcotics conviction (Health & Saf. Code, § 11370.2, subd. (b)).

After the trial court indicated "a top of six years" and the understanding that defendant would file a *Romero* motion, defendant pleaded no contest to counts 1, 3, 4, and 5 and admitted the strike allegation.

### B. *Probation Report*

The probation report contained information about defendant's current offenses, strike prior, and other criminal history, as well as a statement by defendant and an evaluation of his case.

#### 1. *Current Offenses*

Officers executed a search warrant at defendant's residence and vehicle in July 2017. Officers found 19.6 grams of methamphetamine wrapped in eight separate plastic bindles, 22.9 grams of cocaine base wrapped in 37 separate plastic bindles, 3.9 pounds of marijuana in four separate bags, 30 PCP cigarettes, two digital scales, and two cell phones. Most of the drugs had been found in an air vent inside defendant's vehicle.

2

## 2.    *Strike Offense*

Defendant's strike prior was a 1993 conviction of assault with intent to commit mayhem, rape, or sodomy (Pen. Code, § 220), for which he was sentenced to two years in prison.  That conviction stemmed from an incident at a liquor store.  Defendant bought a snack for a 12-year-old girl and her brother, asked the children to go to a park, and grabbed the girl's breast.

## 3.    *Other Criminal History*

Including the strike prior, defendant had 12 prior felony convictions and 42 prior misdemeanor convictions.  Defendant had been granted probation three times.  Two of those grants of probation ended up with revocations; one was terminated early.  Defendant had incurred 10 parole violations.  In addition to the prison sentence he had served for the strike, defendant had been sentenced to prison two other times and had returned to prison seven times for parole violations.

## 4.    *Defendant's Background*

Defendant was 56 years old at the time of sentencing.  He told the probation officer he had been diagnosed with prostate cancer two weeks before his interview, which was in early April 2019.  Defendant did not yet know what his cancer treatment would entail, but he anticipated he would undergo chemotherapy.

Defendant acknowledged that he had not participated in any programs when he was out of custody.  He admitted he had a drug problem that involved daily use of PCP and methamphetamine.  He blamed his PCP use for his strike prior, asserting that he would not have committed the offense if he had been sober.  He wanted "to be granted the opportunity to participate in a treatment program."  He was finally "ready to change."

Defendant had recently reconciled with his family.  He had been receiving Supplemental Security Income but hoped to work as an electrician.  In addition to the cancer diagnosis, he had high blood pressure, asthma, rheumatoid arthritis, and bipolar disorder.

3

### 5.  *Evaluation*

The probation officer acknowledged that defendant's current offenses were not violent or serious.  However, the probation officer opined, the "criminal conduct exhibited" by defendant was "indicative of experience and planning."  The probation officer felt that defendant's "character and prospects appear poor" due to his long substance abuse history and his prior performance on supervision.

## B.  **Romero Motion**

Defendant's *Romero* motion listed the following reasons why the trial court should grant the motion:  "The prior strike arose from a case in 1993.  He did not abuse or hurt the victim. [¶] The strike is old in time, over 25 years ago. [¶] The current case is not violent, nor serious. [¶] The present case involves possession for sale of small amounts of illegal substances. [¶] The present case is neither serious nor violent. [¶] The present case did not involve violence or threat of violence, nor are weapons involved. [¶] [Defendant] has strong family support. . . . [¶] [Defendant] is disabled and receives disability benefits from [a] social security documented mental illness.  He is willing to seek and maintain treatment. [¶] [Defendant] is 56 years old.  And his criminality has decreased in the last decade."

A number of documents were attached to the motion.  A doctor's letter indicated that defendant had been in psychiatric treatment since 2012, that he had been treatment and medication compliant, and that he would benefit from a supervised drug recovery program.  A certificate of participation indicated that defendant had participated in 29 sessions of a program called Open to Change.  Another document showed defendant's enrollment in an adult education program.  A progress report from the Sheriff's Office Programs Unit showed that defendant had been participating in the Three R's Program, which addressed substance abuse, criminal thinking, relationships, and conflict resolution/anger management.

4

A letter written by defendant was attached to his *Romero* motion.  In the letter, he described his participation in the City Team Church program after his last stint in prison and his participation in weekly NA/AA meetings.  Defendant also described how he had been on disability due to osteo-rheumatoid arthritis, and how he performed volunteer work and spent time with his family.  Letters from defendant's long-time girlfriend, daughters, friends, and others were also attached to the *Romero* motion.

## *C*.     *Opposition*

In opposition to defendant's *Romero* motion, the People first asserted that defendant's current convictions showed he had "not left the life of drug sales and drug use behind him."  The People observed that defendant's stated desire to work on his sobriety should be considered in light of the fact he had many prior opportunities to get sober but had failed to do so.  The People urged the trial court to disregard defendant's "convenient and self-serving" claims.

The People next addressed defendant's prior criminal history.  The People asserted that defendant's criminal history had begun 37 years earlier and had been "continuous." The People noted that because defendant's strike offense was related to his drug use, it was "not an isolated incident" but rather a part of his "perpetual" drug-related criminality. The People included a chart of defendant's prior convictions, which dated back to 1982.

The People observed that defendant could have participated in support groups, rehabilitation programs, and other resources outside of prison but had failed to do so. The People asked the trial court to be "skeptical" of defendant's asserted desire to "turn over a new leaf."  The People asserted that defendant was "precisely the type of recidivist criminal" contemplated by the Three Strikes law, and not someone who should be deemed outside the spirit of that law.

## *E*.     *Trial Court Ruling/Sentence*

At the September 2019 hearing on defendant's *Romero* motion, defendant's trial counsel argued that after the strike offense, defendant's criminal history had consisted of

5

mostly "misdemeanor conduct and not serious offenses." Defendant was "much older" now. Defendant had been diagnosed with "prostate Stage IV cancer," had undergone surgery, and was still in treatment, which might entail another surgery. Defendant was not "the same person that he was even five years ago" because he had come "face to face with a life or death situation," which had made him think about his life differently.

Defendant then addressed the trial court. He acknowledged having a long-term drug problem, and he claimed he had learned more about his drug use through the Three R's Program. Defendant described his cancer treatment, which involved radiation, chemotherapy, and hormone therapy. The cancer diagnosis had made him "look at life a whole different way." He claimed, "I want to change my life." Defendant also wanted to finish his cancer treatment locally rather than in prison. He had missed some treatments while in jail, and his doctors had told him that he could not miss any more appointments. Defendant was concerned that if he was sent to prison, he would not get the treatment he needed.

The trial court responded, "Unfortunately, those are not things that I can consider in terms of your *Romero* motion. The law's very clear on what can be considered in terms of granting or denying your motion. . . . I have to decide based on those requirements. And it's unfortunate, but one of the things that can't be taken into consideration is your well-being. That's not one of the criteria so I have to proceed under the law."

The trial court indicated that the factors it had considered were defendant's "past criminal history, whether there's been a washing-out period, what your prospects are." The trial court had also considered the "age of the strike" and the fact that defendant's current offenses involved "a relatively small quantity of drugs." The trial court found that defendant's criminal history "has not been good," referencing his numerous felony and misdemeanor convictions and the fact that there had "really been no washing-out period." The trial court also noted that defendant had never sought drug treatment while

6

out of custody and that "it's very easy to do that when you're in custody." The trial court referred to defendant's parole violations and found that defendant's prospects were not "too bright in terms of living a crime-free life."

Ultimately, the trial court determined that defendant did not fall within "the spirit of" the Three Strikes law, and it denied defendant's *Romero* motion. The trial court imposed the low term of three years, doubled to six years pursuant to the Three Strikes law, for count 1 (possession for sale of PCP). The trial court imposed concurrent terms for the other three counts.

## II. DISCUSSION

Defendant contends the trial court abused its discretion by refusing to consider defendant's comments about having cancer and wanting to change his life as a result. He asserts that the matter should be remanded for reconsideration of his *Romero* motion.

### A. *Standard of Review*

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under [Penal Code] section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

### B. *Romero Standards*

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be

7

treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

When ruling on a *Romero* motion, a trial court " 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) In making that decision, the trial court may not give any "weight whatsoever . . . to factors extrinsic to the scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Also, in "an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Ibid*.)

## C. *Contentions*

Defendant contends that because *Romero* requires "an individualized consideration" of his background, character, and prospects, the trial court was required to consider "the possibility that grappling with a potentially fatal bout of cancer had produced philosophical or moral growth" in defendant. Defendant also contends that the trial court was required to consider the fact that defendant "might be close to death." Defendant argues that even if the trial court properly interpreted defendant's remarks as a

request for consideration of how prison would impact his physical "well-being," the trial court was wrong when it declined to consider that concern.

The People concede that "the trial court was not prohibited from considering [defendant's] medical condition." However, the People assert, even if the trial court erred by failing to consider defendant's cancer diagnosis, remand is not required. Because the trial court's decision was properly based on "factors supported by the record," it is not reasonably probable that the trial court would have granted the *Romero* motion even if it had considered defendant's cancer diagnosis.

### D. *Analysis*

We have closely reviewed the trial court's comments following defendant's statement at the sentencing hearing. When the trial court stated that there were "things" it could not consider, and specifically referenced defendant's "well-being," the trial court was referring to defendant's cancer diagnosis and his concerns about getting proper medical treatment if he was sentenced to prison. The trial court's comments did not indicate a belief that it could not consider defendant's assertions about wanting to change his life as a result of the cancer diagnosis. Thus, we will focus our analysis on the question of whether the trial court erred by not considering defendant's cancer diagnosis and concerns about continuing his treatment in prison.

Neither party has cited a case specifically addressing the question whether a trial court may consider a defendant's serious medical condition when ruling on a *Romero* motion. (Cf. *People v. Kelley* (1997) 52 Cal.App.4th 568, 582 [declining to decide whether "terminal cancer is a mitigating factor for sentencing purposes"].) Defendant cites to *People v. Garcia* (1999) 20 Cal.4th 490, which held that a trial court can consider whether the defendant's prior crimes "were related to drug addiction" when ruling on a *Romero* motion. (*Id.* at p. 503; see also *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1031 [circumstances relevant to defendant's *Romero* motion included his " 'mental health issues, and alcoholism [which] most likely contributed to his actions' "].)

9

However, defendant is not asserting that his cancer diagnosis had any relation to his prior criminality; nor could he, as his diagnosis came after he committed his crimes.

We agree with the parties in this case that, in ruling on a defendant's *Romero* motion, a trial court may properly consider a defendant's physical health when assessing "the particulars of his background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161; cf. *People v. Strong* (2001) 87 Cal.App.4th 328, 345 (*Strong*) [courts may consider a defendant's "age in conjunction with the length of the sentence and the defendant's prospects"].)  A defendant's serious medical condition may be relevant to the question of whether the dismissal of a strike allegation would be "in furtherance of justice" (Pen. Code, § 1385, subd. (a)) in a particular case.  (See *In re Saldana* (1997) 57 Cal.App.4th 620, 626 [trial court's dismissal of strike allegation, based in part on defendant's "personal and family situation," was not an abuse of discretion]; cf. *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 (*Gaston*) [declining to consider defendant's diabetes "as mitigating"].)  Thus, the trial court in the present case erred by finding it was categorically barred from considering defendant's cancer diagnosis and medical needs when determining whether defendant's "circumstances" were so " 'extraordinary' " that he could be deemed to fall outside the spirit of the Three Strikes law.  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Before turning to the question of whether to remand this matter for reconsideration of defendant's *Romero* motion, we emphasize that although a defendant's serious medical condition may be relevant to his or her "background, character, and prospects," a trial court must still also consider "the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions" when determining whether "the defendant may be deemed outside" the spirit of the Three Strikes law.  (*Williams*, *supra*, 17 Cal.4th at p. 161.)  We also note that in this case, defendant provided no evidence that his cancer treatments could not effectively continue in prison, and no evidence to support his appellate claim that he "might be close to death."

10

In determining whether remand is required in this case, we apply settled principles. "*Romero* establishes that where the record *affirmatively* discloses that the trial court *misunderstood* the scope of its discretion, remand to the trial court is required to permit that court to impose sentence with full awareness of its discretion as clarified in *Romero*. [Citation.] *Romero* also clearly holds that remand is not required where the trial court's comments indicate that even if it had authority to strike a prior felony conviction allegation, it would decline to do so." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944.) If a trial court relies on both permissible and impermissible factors in ruling on a *Romero* motion, a reviewing court will remand for reconsideration " 'only if it is reasonably probable that the trial court would have' " granted the motion had it known that some of the factors were improper. (*People v. Leonard* (2014) 228 Cal.App.4th 465, 503 (*Leonard*).)

In this case, after carefully reviewing the trial court's comments and the evidence relevant to defendant's *Romero* motion, we have determined that remand is not required. The record shows that the trial court would not have exercised its discretion to dismiss the strike allegation even if it had considered defendant's cancer diagnosis as part of his "background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

The trial court noted it had considered defendant's present offenses, criminal history, and prospects. The trial court did not find this to be a close case with respect to any of those categories. The only facts the trial court found to be favorable were the "age of the strike" and the fact that defendant's current offenses involved "a relatively small quantity of drugs."[1]

The trial court found that defendant's criminal history "has not been good" and that there had "really been no washing-out period." These findings are amply supported

---

[1] The trial court did not address the fact that defendant's current offenses involved multiple types of drugs or the probation report's characterization of the current offenses as demonstrating planning and sophistication.

11

by the record, which established that defendant had "a long and continuous criminal career" consisting of a very significant number of felony convictions, misdemeanor convictions, and parole violations. (See *Strong*, *supra*, 87 Cal.App.4th at p. 338.) The fact that defendant's criminal history "substantially spanned his entire adult life" renders insignificant the remoteness of his strike prior. (See *Gaston*, *supra*, 74 Cal.App.4th at p. 321.)

The trial court also noted that defendant had never sought drug treatment while out of custody. The fact that defendant made no "efforts to bring his substance abuse problem under control" over his long period of criminality is a factor weighing against a finding that defendant's character or prospects bring him outside the spirit of the Three Strikes law. (See *Williams*, *supra*, 17 Cal.4th at p. 163; *Carmony*, *supra*, 33 Cal.4th at p. 378 [defendant had "done little to address his substance abuse problems"].)

Finally, the trial court referred to defendant's parole violations and found that defendant's prospects were not "too bright in terms of living a crime-free life." The record also overwhelmingly supports this finding. In addition to the multiple parole violations, many of defendant's criminal convictions were for repeated crimes. For instance, defendant had two convictions of failing to register as a sex offender, two domestic violence convictions, six felony drug possession convictions, six convictions of being under the influence of a controlled substance, three convictions of driving under the influence, 11 convictions of driving on a suspended license, eight convictions of resisting arrest, and three theft-related convictions. The record thus " 'reveals that [defendant] had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson.' " (*Williams*, *supra*, 17 Cal.4th at p. 163.)

Given the trial court's comments and the evidence in the record, as well as the absence of any evidence that defendant's cancer could not be effectively treated in prison, "there is no reasonable possibility that the trial court would have stricken [defendant's]

12

prior conviction allegation" had it also considered defendant's cancer diagnosis and need for treatment. (See *Leonard*, *supra*, 228 Cal.App.4th at pp. 503-504.)

## III.    DISPOSITION

The judgment is affirmed.

_____

                                                 Cogliati, J.[*]

WE CONCUR:

_____

    Elia, Acting P.J.

_____

    Bamattre-Manoukian, J.

People v. Reyes
H047416

_____

[*] Judge of the Santa Cruz County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.