Filed 2/19/26  P. v. John CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPH VALOR JOHN,<br><br>    Defendant and Appellant. | F088196<br><br>(Super. Ct. No. CR-22-000552)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Galen N. Farris and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Meehan, J. and DeSantos, J.

# INTRODUCTION

Defendant Joseph Valor John (defendant) contends on this appeal that the trial court abused its discretion when it denied his request to dismiss his enhancements under Penal Code section 1385,[1] subdivision (c) and chose not to strike one of his strike convictions pursuant to *Romero*.[2]  The People disagree and contend defendant fails to demonstrate the court abused its discretion in its sentencing.  We agree with the People and cannot conclude the court abused its discretion when it declined to dismiss any of his enhancements or strike his strike convictions.  We affirm the judgment.

# PROCEDURAL SUMMARY

Defendant was charged with attempted murder on a peace officer (§§ 664, subd. (e)/187, subd. (a), count I) and assault with a deadly weapon (§ 245, subd. (a)(1), count II).[3]  As to count I, it was alleged the intended victim was a peace officer (§ 664, subd. (e)) and the use of a deadly weapon caused the offense to be a serious offense (§ 1192.7, subd. (c)(23)).  As to both counts, it was alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) and had three prior strike convictions (§ 667, subd. (d)) and three prior serious felony convictions (§ 667, subd. (a)).  Defendant was notified of the following circumstances in aggravation:  California Rules of Court,[4] rule 4.421(a)(1), (a)(2), (b)(1), and (b)(2).

On April 12, 2022, the trial court declared doubt regarding defendant's competency under section 1368 and suspended criminal proceedings.  On May 17, 2022, the court found defendant competent and reinstated criminal proceedings.

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[3]     Defendant was additionally charged with robbery (§ 211) in count III, but the charge was dismissed by the People during trial, at the conclusion of their evidence.

[4]     All further rule references are to the California Rules of Court.

2.

On October 10, 2023, the jury found defendant not guilty of attempted murder or the lesser included offense of attempted voluntary manslaughter. The jury found defendant guilty on count II and found true the personal infliction of great bodily injury enhancement. On October 12, 2023, a court trial was held on the prior conviction and aggravating circumstance allegations. The court granted the People's motion to dismiss one of the three strike convictions (§ 667, subd. (d)) and one prior serious felony conviction (§ 667, subd. (a)). The court found true the March 24, 2011 strike conviction and serious felony conviction, as well as the May 8, 2014 strike conviction and serious felony conviction. The court found each of the aggravating circumstance allegations true.

On January 12, 2024, defendant filed a request for the trial court to exercise its discretion to dismiss the prior strike convictions under section 1385. Defendant also requested the court strike the enhancement under section 12022.7, one or both priors under section 667, subdivision (a), or one or both prior strike convictions under section 667, subdivision (d). On February 1, 2024, the People filed an opposition to defendant's request. On May 8, 2024, the court heard argument and took the matter under submission.

On May 16, 2024, the trial court declined to strike any of defendant's strikes or dismiss either of his enhancements. The court sentenced defendant as follows: 25 years to life on count II pursuant to the "Three Strikes" law, plus a consecutive term of three years for the great bodily injury enhancement (§ 12022.7, subd. (a)) and 10 years for the two prior serious felony convictions (§ 667, subd. (a)) for an aggregate term of 38 years to life in state prison.

Defendant filed a timely notice of appeal.

**FACTUAL SUMMARY**

*The Prosecution Case*

On January 22, 2022, at approximately 6:00 p.m., defendant entered a gas station convenience store located in Ceres. Defendant told the clerk that he was "going to walk

3.

out with these things. I don't want to hurt you." Defendant was wearing all black and had a backpack. He proceeded to take several items, including a bag of chips, from the shelves. The clerk did not think it was too serious and chose not to stop him. The clerk informed his manager who had him call 911.

Ceres Police Officer Krandall Vandagriff responded to the call of a robbery and observed defendant, who matched the description, walking northbound from the store. Vandagriff stopped his patrol car and identified himself as he approached defendant. Vandagriff asked defendant if they could talk, noting he saw "food items" in his hands. Defendant became confrontational stating, "no, you listen to me" and "come at me, Bro" and walked away. Based on defendant's behavior and lack of cooperation, Vandagriff called for backup.

A community services officer (CSO) responded to the scene while Vandagriff was trying to get defendant to talk and calm down. Upon observing defendant walking away from Vandagriff, the CSO took out his taser, pointed it at defendant and ordered him to stop. Defendant continued to ignore both Vandagriff's and the CSO's commands by walking away and saying he was not doing anything wrong.

At this point, officer Christian Izquierdo arrived in his marked patrol vehicle, with the lights activated. Before Izquierdo exited his vehicle, defendant threw what he was holding in his hands into the roadway and took off running. The officers chased defendant.

Izquierdo caught up with defendant first. When Izquierdo grabbed defendant's shoulder, he spun around to face Izquierdo and started striking him in the head with a weapon. Defendant struck Izquierdo's head three times with a weapon and yelled, " 'Die mother[******].' " One of the strikes hit the back of Izquierdo's head. Both Izquierdo and defendant fell to the ground.

Izquierdo was able to work his way back to his feet and observed the weapon had a pink handle and a sharp silver end to it. The weapon was on the ground but defendant

4.

was reaching for it. Izquierdo shouted out to the other officers that defendant had a knife. The CSO used his taser cartridge to apply "dry stuns" to defendant's shoulder to gain compliance and subdue him to the ground. Once defendant was in handcuffs, he said to the officers, "No one cares about me, man. Just [f***]ing shoot me[.]" Officers recovered the weapon which was a six- to seven-inch long metal object with a pointy end. Defendant let the officers know he also had a homemade knife in his backpack, which they located. Defendant's backpack contained multiple grocery items.

The CSO noticed a two-inch laceration to the back of Izquierdo's head and began treating it. Izquierdo was transported by ambulance to the hospital where he received five staples to the back of his head.

*The Defense Case*

Defendant testified that on the day of the incident he had been using methamphetamine and walked from Turlock to Ceres. Defendant was hungry but had no money. He went inside the gas station market with the intent to grab some groceries and leave without paying. Defendant was not trying to be threatening, and told the clerk that he did not want to hurt him because he did not want the clerk to rush him or try to stop him. Defendant acknowledged that he was letting the clerk know if he did try to stop him he may do something to hurt the clerk.

Defendant testified that he found the weapon, which he called a "pick," on the side of the road while walking to Ceres. He picked it up and put it in his pocket because he thought it would be useful for cleaning out smoking devices. Defendant also found the other weapon on the street, which he picked up and put in his backpack.

Defendant testified he was surprised when Vandagriff tried to stop him. Vandagriff was not being aggressive or threatening, but defendant walked away because he knew he did something wrong and did not want to talk. Defendant did not remember saying "Come at me" to Vandagriff after the prosecution replayed the body cam video. Defendant felt the CSO was being overdramatic when he arrived and pointed a taser at

5.

him, in response to him taking "just a few products from the store." But when Izquierdo pulled up with the lights of his patrol car activated, defendant became scared and felt like he was going to jail and so he ran.

Defendant explained that he pulled out the "pick" while he was running because he thought it would cause the police to use their force against him or shoot and kill him. Defendant did not believe he was going to attack Izquierdo but acknowledged he told Izquierdo, "Die mother[******]." Defendant said that when Izquierdo reached him, he said he did not know what he was doing. It happened so fast; he acted on instinct or automatically. Defendant was on parole and under the influence of methamphetamine.

Defendant was also upset at that time because the mother of his son was not letting defendant see his son due to defendant's drug use. Defendant was 35 years old and had been using methamphetamine since he was 21 years old. Defendant said his drug use became a chronic problem after going to prison and then losing visitation with his son. According to defendant, he had been suicidal and had attempted to commit suicide. Defendant was diagnosed with depression, anxiety, and borderline personality disorder. Defendant felt "horrible" and "deeply, deeply sorry" for injuring Izquierdo.

A criminalist with the Department of Justice testified that he had analyzed a blood sample taken from defendant that tested positive for the presence of methamphetamine and amphetamine. He related that a person under the influence of methamphetamine may be prone to engage in risk-taking behavior like running from the police and fighting with the police.

*The People's Rebuttal Case*

Vandagriff testified on rebuttal that the search of defendant's backpack did not uncover any drugs or drug paraphernalia.

# DISCUSSION

## Trial Court Did Not Abuse its Discretion When it Declined to Dismiss Any of Defendant's Enhancements Pursuant to Section 1385, Subdivision (c).

### Relevant Factual and Procedural Background

In his moving papers, defense counsel requested the trial court to strike one or both of his prior strike convictions, strike the section 12022.7 enhancement, and/or the "(d) prior." Defense counsel noted defendant's traumatic history "including someone putting cigarettes out on his skin in his early youth, and a history of drug addiction."

During the sentencing hearing, defense counsel noted that one of the mitigating circumstances was that the section 667, subdivision (d) priors were over five years old occurring in 2011, with convictions in 2013 and 2014. Although the convictions are separate cases, the two strikes are related in that they occurred on the same night. Defendant had gone without any significant felony convictions since being released on his prior convictions and argued his two misdemeanor convictions do not show an increase in criminality. Defense counsel acknowledged this present case does involve great bodily injury but did not think defendant's conduct was more sophisticated or increased in severity from his prior strikes.

Defense counsel also drew attention to defendant's childhood trauma and mental health issues. Counsel referenced Philip S. Trompetter, Ph.D.'s, report which indicated defendant had attempted suicide. As such, defense counsel contended a life sentence would not be in the spirit of the Three Strikes law and reminded the trial court it had discretion to strike one of his strikes, stay the section 12022.7 enhancement and stay the section 667, subdivision (a) priors.

The prosecutor asked the trial court not to strike any of the enhancements or prior convictions and sentence him pursuant to the Three Strikes law. The prosecutor argued defendant had a "history of violent felonies, specifically those two prior strike convictions. Then even after that he's continually engaged in criminal behavior with the

DUI. He did have a [section] 2800.2 [violation] in 2020, then while in custody after this case, he did have that assault on the custodial officer which we did decide to dismiss." The prosecutor felt it was clear based on defendant's history that he continually engaged in dangerous and violent conduct. This case could have been more serious given the gash on the back of Izquierdo's head, which could have killed Izquierdo if the gash was a couple inches in another direction. Defendant chose to escalate the theft, which he had done multiple times before. Defendant's earlier cases, although over 10 years old, involved "very dangerous conduct, actually kind of in line with his conduct in this case." Defendant had major felonies he had been convicted of and put three different people's lives in danger, which is a highly aggravating factor.

The trial court took the matter under submission after noting the stakes were serious for defendant, who did not have as lengthy a rap sheet as other nonhomicide life cases, and noting the jury had made a determination that defendant was not trying to kill Izquierdo. On the other hand, the court found defendant's behavior was very violent and erratic. The court took judicial notice of Trompetter's report. The court noted there had "been significant changes in the legislation regarding sentencing on the priors, and the [c]ourt has to specifically state and delineate its reasoning concerning exercising or not exercising its discretion in regards to imposing aggravated terms, mitigated terms and whether to stay or impose or strike enhancements, particularly the [L]egislature has been [focusing] on childhood trauma. This court would be reversed if I don't make specific findings that I considered those things. So I do want additional time to be able to review Trompetter's report in light of all of those things."

At the next hearing, the trial court stated it had considered arguments from both counsel and reviewed Trompetter's evaluation report. The court noted that both of defendant's prior cases involved defendant using a deadly weapon to strike the victims' heads. In the present case, defendant also used a weapon to strike Izquierdo in the head. In mitigation, the court noted defendant seemed to be suffering from depression, that he

recently had family problems, and that it appeared to the jury that defendant was not trying to kill Izquierdo, even though defendant did make the statement, "I'm going to kill you." The court believed that in the prior instances, defendant made similar statements to the victims.

The trial court considered that the jury found the circumstances in aggravation and great bodily injury enhancements true. The court considered defendant's conduct post arrest, where he was kicking and spitting at the officer, and concluded defendant's behavior had not changed over the years. Therefore, the court felt the offense was not outside the spirit of the Three Strikes law and that it would be an abuse of the court's discretion to strike either one of defendant's prior strikes.

Additionally, the trial court stated it took into consideration the factors pursuant to section 1385, subdivision (c). The trial court declined to strike any of defendant's enhancements as well. The court found defendant's prior convictions as an adult have been increasing in seriousness because he moved on to victimizing law enforcement; he has been a danger to society, used a weapon and caused great bodily injury; and his conduct indicates a high degree of cruelty, viciousness and callousness.

**Standard of Review**

An appellate court reviews a trial court's decision not to strike an enhancement under section 1385, subdivision (c) for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) The party challenging the sentence bears the burden of " ' clearly show[ing] that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*), quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978.)

A trial court abuses its discretion when it considers improper factors in making its decision under section 1385 or, conversely, when it fails to consider relevant factors. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140–1141; see also *Carmony*, *supra*, 33 Cal.4th at p. 378.)

**Applicable Law**

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Senate Bill No. 81 added subdivision (c)(1) to section 1385, which states, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." It also added subdivision (c)(2), which provides, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present."

The list of mitigating circumstances includes the following:

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] … [¶]

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5. [¶] … [¶]

"(H) The enhancement is based on a prior conviction that is over five years old." (§ 1385, subds. (c)(2) (B), (D), (E), (F), (H).)

"Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

"The trial court is not required to state reasons for declining to exercise its discretion under section 1385" (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 433; see also *In re Large* (2007) 41 Cal.4th 538, 550) and "is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*)). When … the record is silent as to its reasons, we presume the court " 'correctly applied the law.' " (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

**Analysis**

Defendant fails to demonstrate the trial court abused its discretion when it declined to dismiss any of his enhancements under section 1385, subdivision (c)(2). Defendant argues that enumerated mitigating circumstances applied to his case. However, our Supreme Court held that the existence of enumerated circumstances under section 1385, subdivision (c)(2) does not create a rebuttable presumption in favor of dismissal but, rather, gives the court discretion to dismiss an enhancement when it is in the furtherance of justice to so do. (*People v. Walker* (2024) 16 Cal.5th 1024, 1033.) We conclude the court's decision to not dismiss any enhancements under section 1358, subdivision (c) was supported by evidence, and therefore, not an abuse of discretion.

The record clearly shows the trial court considered the mitigating factors under section 1385, subdivision (c)(2). Via defendant's motion, the court was aware defendant argued the following mitigating circumstances permitted striking enhancements: where application of the enhancement could result in a sentence of over 20 years; if the current offense is connected to mental illness; if the current offense is connected to childhood

trauma; if the current offense is not a violent felony; or if the enhancement is based on a prior conviction over five years old.

In evaluating the enumerated mitigating circumstances under section 1385, subdivision (c)(2), the trial court must engage in a " 'holistic balancing with *special emphasis* on the enumerated mitigating factors,' " which weigh strongly in favor of dismissal. (*People v. Walker*, *supra*, 16 Cal.5th at pp. 1035–1036.) The record shows the court was aware of the special emphasis to be given enumerated circumstances. The court gave itself extra time to reach its decision for the sole purpose of giving special emphasis to defendant's mental health and childhood trauma. (*Ibid*. [enumerated mitigating factors are entitled to increased significance].) Specifically, the court stated it wanted to review Trompetter's report in light of the legislative changes regarding whether to strike the enhancements. At the sentencing hearing, the court confirmed that it had reviewed Trompetter's report and argument from both counsel. The court considered defendant's mental health, finding he suffered from depression, drug addiction and recent family issues at the time of the offense. The court also heard from defendant on his childhood trauma, depression and being suicidal. Therefore, the court demonstrated that it gave special emphasis to the enumerated mitigating factors

However, the trial court also considered the aggravating circumstances in the case. The jury found true circumstances in aggravation that the crime involved great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)), defendant used a weapon in the commission of the crime (rule 4.421(a)(2)), and defendant's prior convictions are numerous or of increasing dangerousness (rule 4.421(b)(2)). Looking at his prior strike conviction offenses, the court noted defendant also used a deadly weapon in those cases, also delivered strikes to the heads of his victims, and also made similar statements to his victims that he was going to kill them. Defendant's behavior since he committed this offense, which included kicking and spitting at officers, showed the court that defendant is not changing.

12.

The court's exercise of discretion involves more than a strictly binary weighing of mitigation against public safety, it additionally involves applicable sentencing principles relevant to its determination of whether dismissal is in furtherance of justice, such as defendant's background, character, and prospects. (*People v. Ortiz* (2023) 87 CalApp.5th 1087, 1097.) The determinate factor for the court is whether it is in the furtherance of justice to dismiss an enhancement. (*Id*. at p. 1098.) The court considered the factors relevant to its determination that it is not in the furtherance of justice to dismiss an enhancement: defendant's background which contains prior convictions involving the same violent behavior using a weapon to cause bodily injury; defendant's character which was considered a "high degree of cruelty, viciousness, and callousness"; and defendant's prospects which showed increasing in dangerousness because he moved on to attacking law enforcement and continued such behavior even after arrest. Here, the record supports the court's determination that defendant was a "danger to society."

On this record, we cannot conclude the court's decision to not dismiss an enhancement was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377; *People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 299.) Therefore, defendant fails to demonstrate the court abused its discretion.

We discern nothing in the trial court's pronouncement of judgment that supports defendant's claim the court applied an improper standard for assessing the danger to public safety. Specifically, defendant cites to *Gonzalez* to argue the court did not additionally consider future dangerous, i.e., "how the dismissal of the enhancement will impact the length of the defendant's sentence." (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228.) The defendant in *Gonzalez* was sentenced to an indeterminate term of 50 years to life for first degree murder, plus 25 years to life for a section 12022.53, subdivision (d) enhancement. (*Gonzalez*, at p. 220.) The court denied the defendant's request to dismiss the enhancement pursuant to section 1385,

subdivision (c) based on its finding the defendant " 'presently … does represent a danger to society.' " (*Gonzalez*, at p. 224.)  Explaining its ruling, the court interpreted section 1385, subdivision (c)(2) as "requir[ing] [it] to decide whether the defendant 'currently at the time of sentencing represent[s] a danger to society.' " (*Gonzalez*, at p. 227.)  *Gonzalez* reversed, holding the court applied an incorrect legal standard by focusing solely on "whether the defendant *currently* poses a danger." (*Id*. at p. 228.)  It explained that in addition to the current dangerousness of the defendant, a sentencing court should also consider how dismissal of enhancements would impact the length of the defendant's sentence or parole eligibility, because a defendant "who has no prospect of release from prison until he is elderly" may pose less of a risk to public safety.  (*Ibid*.)

Nothing in the instant case indicates the trial court misinterpreted its discretion under section 1385, subdivision (c)(2), as set forth in *Gonzalez*, or limited its assessment solely to whether defendant is currently dangerous.  Unlike *Gonzalez*, the court never stated it was limited to deciding whether the defendant currently represents a danger to society.  (See *Gonzalez*, *supra*, 103 Cal.App.5th at p. 227.)  Instead, it determined that dismissal of the enhancement would endanger public safety.  Nothing in the record suggests the court only considered his current dangerousness.  Rather the court's concern focused on circumstances showing both past, present and future dangerousness: defendant's repeated pattern of use of a weapon to cause great bodily injury, his increasing dangerousness, the repeated patterns of cruelty and viciousness, recent increasingly dangerous behavior of targeting law enforcement officers, and that such behavior continued in jail after arrest.  Therefore, defendant fails to show the court applied an incorrect legal standard in its determination whether dismissal of an enhancement would endanger public safety.

**Trial Court Did Not Abuse Its Discretion in Denying Defendant's *Romero* Motion.**

Defendant contends the trial court erred by denying his motion to strike a prior strike pursuant to *Romero*. Defendant bases this assertion on his argument that he does not have an extensive criminal history, that it was not shown he intended to kill Izquierdo, and that he was struggling with depression and suicidal ideation due to drug addiction and losing visitation with his son. The People contend defendant fails to carry his burden of demonstrating an abuse of discretion. We agree with the People.

**Applicable Law and Standard of Review**

A trial court's discretion whether to strike a prior strike conviction is subject to review for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 375; *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss," or where " 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Carmony*, at p. 378.) " 'It is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Ibid.*) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

"The trial court is not required to state reasons for declining to exercise its discretion under section 1385." (*Myers*, *supra*, 69 Cal.App.4th at p. 310.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*Ibid*.) When, as here, the record is silent as to the court's reasons for declining to strike a prior strike, we presume that the court " 'correctly applied the law.' " (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Only in "an extraordinary case—where the relevant factors … manifestly support the striking of a prior conviction

and no reasonable minds could differ [would] the failure to strike … constitute an abuse of discretion." (*Ibid*.)

The trial court's discretion to strike a prior felony conviction under section 1385 must be viewed through the lens of the Three Strikes alternative sentencing scheme. (*Wheeler v. Appellate Division of Superior Court* (2024) 15 Cal.5th 1193, 1206–1207.) "[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528.) To achieve this end, "the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court 'conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.' " (*People v. Strong* (2001) 87 Cal.App.4th 328, 337–338.)

"Consistent with the language of and the legislative intent behind the [T]here [S]trikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to … section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Carmony*, *supra*, 33 Cal.4th at p. 377; *People v. Williams* (1998) 17 Cal.4th 148, 161.)

**Analysis**

The record shows the trial court conducted the proper review when it considered relevant factors and properly balanced them when it concluded defendant fell within the spirit of the Three Strikes law. The court considered the nature and circumstances of defendant's present felonies and prior serious and/or violent felony convictions, along with his background, character, and prospects. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 161; *Carmony*, *supra*, 33 Cal.4th at p. 377.) The court acknowledged that defendant's "rap sheet isn't as lengthy as those we see in life cases that are non-homicide." The court acknowledged the jury's determination that, in the current offense, defendant "was not trying to kill the officer." And the court acknowledged the evidence that, at the time of the current offense, defendant was suffering from depression and had family problems.

On the other end, the trial court determined defendant's prior strike convictions were similar in nature to defendant's current conviction. In both of his prior strike convictions, defendant struck the victims in the head with a baseball bat, which is similar to the present conviction where defendant struck Izquierdo in the head with a deadly weapon. In his prior convictions, defendant also said something close to the effect of "I'm going to kill you." The court further noted the jury's finding that defendant inflicted great bodily injury upon Izquierdo, along with the increasing seriousness of his crime moving up to a law enforcement officer, including an incident of kicking and spitting at an officer at jail. On this record, the court's decision not to strike defendant's prior strikes is neither irrational nor arbitrary and does not constitute an abuse of its discretion. (See *Carmony*, *supra*, 33 Cal.4th at p. 379.)

To support his challenge, defendant relitigates arguments he already raised before the trial court at sentencing: that defendant does not have an extended criminal history, the jury did not find he intended to kill Izquierdo, he had been using drugs, he lost visitation with his son and was depressed and suicidal. These points were considered by

the court and do not establish the court abused its discretion.  (See *Carmony*, *supra*, 33 Cal.4th at p. 378 [decision not reversed where reasonable people might disagree].)

To the extent defendant argues the trial court should have considered the enumerated mitigating factors in section 1385, subdivision (c)(2) to strike a strike conviction, he is misguided.  These enumerated factors are limited to enhancements and do not apply to requests to strike prior strike convictions under the Three Strikes law. (*People v. Burke* (2023) 89 Cal.App.5th 237, 244; accord, *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1154–1156.)

## DISPOSITION

The judgment is affirmed.